400 So.2d 969 (1981)
THE FLORIDA BAR, Complainant,
v.
Larry Gene ULLENSVANG, Respondent.
Nos. 59586, 59778.
Supreme Court of Florida.
July 2, 1981.
John F. Harkness, Jr., Executive Director, Stanley A. Spring, Staff Counsel, James P. Hollaway, Deputy Staff Counsel and John A. Boggs, Asst. Staff Counsel, Tallahassee, David G. McGunegle, Branch Staff Counsel and John B. Root, Jr., Bar Counsel, Orlando, and James W. Hart, Chairman of the Ninth Judicial Circuit Grievance Committee "C", Orlando, for complainant.
Chandler R. Muller of Muller & Kirkconnell, Winter Park, for respondent.
PER CURIAM.
We have consolidated two disciplinary matters against respondent brought by The *970 Florida Bar. Case number 59,778 is before the Court on the report of a referee and the petitions of both parties for review thereof. In case number 59,586, we have before us the report of the referee and the respondent's petition for review.
In case number 59,778 the referee held a hearing on July 2, 1980. In that case the referee made the following findings:
II. Charges Against Respondent. Respondent is charged with violation of Rule 11.02(4) of Article XI of the Integration Rule of the Florida Bar (Trust Funds) and Disciplinary Rule 6-101(A)(3) (Neglect of a Legal Matter).
III. Findings of Fact. The uncontroverted evidence, admitted by Respondent, establishes that:
(a) Respondent accepted escrow funds from the buyer of a condominium apartment on or about June 1, 1977 in the amount of $1,100 (Bar Exhibit 12).
(b) Despite repeated demands from the seller, Respondent failed to remit the proceeds of the sale until more than four months later.
(c) On September 9, 1977, there were insufficient funds in Respondent's trust account to cover the check issued that date to the seller.
(d) As of January 31, 1980, there were 24 overdrawn client trust accounts (Bar Exhibit 13).
(e) Respondent neglected to record the deed to the property until November 22, 1977, and did not forward the property owner's policy of title insurance until September of 1978.
IV. Recommendation as to Guilt. Based upon the foregoing, the Referee recommends that Respondent be found guilty as charged.
The Bar asked the referee to recommend a three month suspension. The referee found that alcoholism and emotional strain contributed substantially to respondent's problems. In view of respondent's lack of a prior disciplinary record, the referee recommended a public reprimand and two years of probation with conditions. The Bar petitions for review of the recommended discipline, requesting suspension for one year, restitution, and assessment of costs.
In case number 59,586 the referee made the following findings and recommendations:
II. Findings of Fact: Pursuant to the commission issued by the Chief Justice of The Supreme Court of Florida on August 25, 1980, in the above entitled matters, the undersigned held a preliminary conference on October 28, 1980, and further held a final hearing on November 3, 1980.
Based upon the Amended Complaint of The Florida Bar, the Respondent's Answer to the Amended Complaint, the Respondent's Answer to The Florida Bar's Request For Admissions, the Oral Argument and documentary evidence received at trial and the reasonable inferences to be drawn therefrom, the referee makes the following findings of fact:
(a) That the Respondent, Larry G. Ullensvang, is, and at all times mentioned in these findings, was, a member of The Florida Bar, subject to the jurisdiction of The Supreme Court of Florida.
(b) On or about October 10, 1978, Mr. Vernon O. Parrish retained respondent to examine a contract for purchase of certain real estate and to have the title to that real estate properly transferred to Mr. Parrish. Mr. Parrish paid respondent a retainer fee of $100 at this time.
Although respondent did write three letters to the Seller, the transfer of title was never accomplished.
Respondent then discontinued his private practice of law without notifying his client, Vernon O. Parrish. Neither the contract which respondent was retained to examine nor the fee was returned to Mr. Parrish at that time.
(c) On or about March 1, 1976, respondent acted as attorney for both parties in a real estate closing. Both parties were aware of his dual representation and consented to it. The subject of the real state transaction was the sale of an apartment complex to Charles K. Knudson and Carole *971 J. Knudson by Robert H. Wheeler and Betty D. Wheeler.
During the course of the closing procedure, the Buyers (the Knudsons), gave to respondent in trust, $472.50 to be used by the respondent to purchase documentary stamps for the promissory notes. In order to effectuate the transaction, the Knudsons gave respondent their Check No. 1, dated March 1, 1976, drawn on the Barnett Bank of Winter Park in the amount of $522.50 which included the sum of $50 as his fee, payable to his trust account.
The check given by Mrs. Knudson to the respondent was deposited by the respondent into his trust account, Account No. XXX-XXX-XXX.
The parties agreed that Mr. and Mrs. Knudson, as Buyers, would not get the deed to the apartment complex until the down payment and the notes due, one each year for three years, were paid. It was further agreed that respondent would hold the deed, mortgage, mortgage note, settlement costs and taxes, and all other papers pertaining to the real property transaction, in trust, in his custody until the three promissory notes which constitute a part of the down payment were fully paid.
The payment on the last note was made by the Knudsons to the Wheelers on or about March 2, 1980.
Mrs. Knudson thereupon informed respondent that necessary payments had been made to the Wheelers as agreed and that the documents should now be released for recording.
Respondent then required proof by the Knudsons that they had given him money to be placed in his trust account. The Knudsons furnished him with a copy of cancelled Check No. 1 which indicated it had been endorsed by respondent and deposited into his trust account.
Respondent then released the deed, mortgage and note, but admitted to the Knudsons that the trust funds in question were no longer in his trust account.
The Knudsons thereupon notified The Florida Bar of the facts recited herein.
(d) On or about March 1, 1976, respondent acted as attorney for both parties in a real estate closing. Both parties were aware of his dual representation and consented to it. The subject of the real estate transaction was the sale of an apartment complex to Charles K. Knudson and Carole J. Knudson, by Robert H. Wheeler and Betty D. Wheeler.
During the course of the closing procedure, the Sellers (the Wheelers), gave to respondent in trust, the sum of $2,316.90 to be used by the respondent to purchase documentary stamps for the deed, for the surtax on the deed and to pay the intangible tax on the mortgage. In order to effectuate the transaction, the Wheelers gave respondent their Check No. 540, dated March 1, 1976, drawn on the Barnett Bank of Winter Park in the amount of $2,366.90, which included the sum of $50 as his fee, payable to his trust account.
The check given by Mrs. Wheeler to the respondent was deposited by the respondent into his trust account, Account No. XXX-XXX-XXX.
The parties agreed that Mr. and Mrs. Knudson, as Buyers, would not get the deed to the apartment complex until the down payment and the notes due, one each year for three years, were paid. It was further agreed that respondent would hold the deed, mortgage, mortgage note, settlement costs and taxes, and all other papers pertaining to the real property transaction in trust, in his custody until the three promissory notes which constitute a part of the down payment were fully paid.
The payment on the last note was made by the Knudsons to the Wheelers on or about March 2, 1980.
Mrs. Knudson thereupon informed respondent that necessary payments had been made to the Wheelers as agreed and that the documents should now be released for recording.
Respondent then required proof by the Wheelers that they had given him money to be placed in his trust account. The Wheelers furnished him with a copy of cancelled *972 Check No. 540, which indicated it had been endorsed by respondent and deposited into his trust account.
Respondent then released the deed, mortgage and note, but admitted to the Wheelers that the trust funds in question were no longer in his trust account.
The Wheelers thereupon notified The Florida Bar of the facts recited herein.
(e) On July 1, 1979, pursuant to the provisions of Article VIII of the Integration Rule of The Florida Bar, the annual dues of the respondent became due.
In October, 1979, respondent forwarded a check to The Florida Bar, dated October 9, 1979, in the amount of $150 in payment of his 1980 Bar dues and a delinquency charge for late payment. The check was deposited in the bank on October 31, 1979, and was returned to The Florida Bar on November 1, 1979, with a notation of "Insufficient Funds." The check was again deposited in the bank by The Florida Bar and was again returned on November 7, 1979, with the notation "Insufficient Funds" on it.
Or or about December 18, 1979, a letter signed by Virginia L. Hardison, Director, Membership Records, The Florida Bar, was mailed to the respondent notifying him of the problem in cashing his check. The letter requested a money order or cashier's check in the amount of $150 immediately and warned that failure to pay immediately would result in respondent's becoming a delinquent member of The Florida Bar without the privilege of practicing law in Florida.
The letter went unanswered and numerous attempts were made to contact respondent by telephone. On several occasions telephone calls were made and no answer at the called number. On one occasion a message was left on the answering machine at respondent's number. Finally, on or about February 6, 1980, he did return a call to The Florida Bar and stated that he would call on February 8, 1980, to advise what disposition he could make.
He failed to call The Florida Bar on February 8, 1980, as promised.
On February 12, 1980, respondent called The Florida Bar and left a message that he would be sending a cashier's check on Friday, February 15, 1980, to cover his dues and penalty. He further promised to call Mrs. Hardison on the day the cashier's check was sent. No such check has been received by The Florida Bar.
On March 3, 1980, Ms. Hardison again wrote respondent notifying him that she was still holding his check which had been returned for insufficient funds.
This letter informed respondent that he had been reclassified as a delinquent member of The Florida Bar, suspended for non-payment of dues, and advised him that until the check was made good he would be ineligible to practice law in Florida.
The check has not been made good nor have the respondent's annual dues for 1980 been paid in any other manner.
(f) The respondent owes Charles K. Knudson and Carole J. Knudson, his wife, the sum of $472.50.
(g) The respondent owes Robert H. Wheeler and Betty Wheeler, his wife, the sum of $2,316.90.
(h) The respondent owes The Florida Bar the sum of $150 for the 1980 Bar dues and delinquency charge for late payment represented by his bad check.
(i) Count II of the Amended Complaint was dismissed with prejudice during this trial because although The Florida Bar has subpoenaed the witness to appear, counsel for The Florida Bar made a motion for a dismissal which the court granted with prejudice. This rendered moot the respondent's Motion To Dismiss Count II on the ground of Res Adjudicata.
III. Recommendations: It is recommended that the respondent should be found guilty of misconduct justifying disciplinary measure.
The evidence relating to Count I clearly and unequivocally reveals that the respondent violated Disciplinary Rules 6-101(A)(3) and 7-101(A)(2) of the Code of Professional Responsibility.
*973 The evidence relating to Count III reveals respondent has violated Disciplinary Rule 9-102(B)(3) and 9-102(b)(4) and Rule 11.02(4) of the Integration Rule of The Florida Bar.
The evidence relating to Count IV reveals that respondent has violated Disciplinary Rules 9-102(b)(3) and 9-102(B)(4) and Rule 11.02(4) of The Integration Rule of The Florida Bar.
The evidence relating to Count V reveals respondent has violated Disciplinary Rules 1-102(A)(4) and 1-102(A)(6).
IV. Recommendation as to Disciplinary measures to be applied: It is recommended that Larry G. Ullensvang be suspended from the practice of law for a period of three years with proof of rehabilitation as well as proof of full restitution to all clients revealed in the present record as well as other clients similarly situated as revealed by the recent audit of his books by The Florida Bar and other proceedings, as well as the costs incurred in these proceedings.
Normally, the referee would recommend disbarment. However, the record reveals that the downfall of the respondent was due to his not enjoying the practice of law plus his becoming addicted to alcohol. The combination of these two factors led to his gross neglect of his clients' affairs, the conversion of trust funds, and a divorce. The respondent has joined Alcoholics Anonymous and is trying to straighten himself out and to make restitution. He has hit bottom. The referee believes he merits a chance to redeem himself.
The Bar has not sought review of the recommended discipline in case number 59,586. Taking into consideration the findings and recommendations in both disciplinary proceedings, we conclude that the appropriate discipline is a three-year suspension. We hereby suspend respondent from the practice of law for a period of three years, effective immediately, and until he proves rehabilitation. We also assess the costs of these proceedings against respondent in the amount of $2,362.29.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.