In re B. Franklin **KERSEY** IV, Respondent.

No. 84–739.

District of Columbia Court of Appeals.

Argued March 27, 1986.
Decided Jan. 28, 1987.

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on the brief, for petitioner Bd. on Professional Responsibility.

James T. Wright, with whom Wesley Williams, Sr., Washington, D.C., was on the brief, for respondent.

Thomas E. Acey, Jr., with whom Steven C. Tabackman, Washington, D.C., was on the brief, for intervenor, Apal, Inc.

Before NEBEKER, NEWMAN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

In this case of first impression, we must decide what effect Franklin Kersey's alcoholism should have upon the disciplinary sanctions imposed by this court for Kersey's twenty-four separate violations of the Code of Professional Responsibility. Kersey's misconduct, which includes three instances of misappropriation of client funds, is severe. Yet, we cannot ignore the reality that his alcoholic condition, which is currently under control, has been, to an extent, a causal factor in this misconduct. While no jurisdiction has ever held that alcoholism is a defense to charges of professional misconduct, many jurisdictions have considered it a mitigating factor when imposing discipline.[1] Indeed, there is a growing awareness in the disciplinary process of the phenomenon of alcoholism, its effect on the legal system and its implications in the disciplinary process.[2]

## I. *Procedural History*

This matter was originally heard by Hearing Committee Number Six on November 10, 1982. The Committee considered evidence on thirty-eight alleged Code violations and found that Kersey had committed thirty-four of these. It recommended that Kersey be suspended from the practice of law for two years, with his reinstatement conditioned on proof of successful treatment for alcoholism. On review, the Board on Professional Responsibility found twenty-four Code violations by Kersey, rejecting two of the Committee's findings of misconduct and not reaching eight others. The Board viewed the evidence of Kersey's alleged alcoholism as vague, and concluded that he had failed to establish a connection between his alcoholism and his misconduct.

---

**1.** See In re Sawyer, 98 Wash. 2d 584, 656 P.2d 503 (1983); In re Driscoll, 85 Ill.2d 312, 316, 53 Ill.Dec. 204, 205, 423 N.E.2d 873, 874 (1981) ("alcoholism is at most an extenuating circumstance, a mitigating fact, not an excuse"); The Florida Bar v. Ullensvang, 400 So.2d 969, 973 (Fla.1981); Tenner v. State Bar of California, 28

Cal.3d 202, 168 Cal.Rptr. 333, 617 P.2d 486 (1980); In re Walker, 254 N.W.2d 452, 457 (S.D. 1977). See also ABA Standards for Imposing Lawyer Sanctions § 9.3 (1986).

**2.** See supra note 1, infra pp. 9–10.

In the Board's opinion, the record demonstrated "a pattern of dishonesty and deceit on the part of [Kersey] so pervasive that disbarment was the only appropriate sanction."

The case was referred to this court for final action. Before action was taken, however, Kersey filed a motion for a remand to determine the impact of his alcoholism on his professional misconduct. After this court granted the motion, Hearing Committee Six held additional hearings to examine the issue of Kersey's alcoholism and its relationship to his Code violations.

Following three days of hearings and extensive briefing, the Committee filed its Report and Recommendation with the Board. The Committee concluded that Kersey is an alcoholic and is currently in recovery. The Committee also found that Kersey's alcoholism led to "delusions and extraordinary lapses of judgment," that his misconduct would not have occurred but for his alcoholism, and that it was unlikely that his misconduct would recur so long as he continued structured rehabilitation. The Committee suggested that Kersey be suspended from the practice of law for five years plus a concurrent indefinite period under D.C. Bar R. XI § 3(2) (1986). It also recommended that Kersey be allowed to apply immediately for a stay of the suspension and to be put on probation.

The Board accepted the Committee's conclusions as to Kersey's alcoholic condition and the role it had played in his misconduct. Nonetheless, the Board rejected the Committee's disciplinary proposals. It was the Board's view that some period of actual suspension was needed to deter similar conduct by other attorneys and to motivate other alcoholic attorneys to recover.[3] Hence, the Board recommended that Kersey be suspended from the practice of law for four years with a three-year stay of execution starting after one year of actual suspension. Throughout the four years, Kersey would be on probation.[4]

Intervenor, APAL, Inc.,[5] a non-profit corporation established by the D.C. Bar Special Committee on Alcohol Abuse, recommends that Kersey be suspended from the practice of law for five years and placed on probation during this time. APAL suggests that this suspension be immediately and indefinitely stayed so long as Kersey complies with probation conditions. Kersey agrees with this proposal. APAL argues that a year of actual suspension would not deter other alcoholic attorneys since alcoholics deny their alcoholism, rarely see their acts of misconduct as wrong, and fail to see the connections between their drinking, bizarre behavior and poor performance.

It is ... [the] conspiracy of silence, coupled with the alcoholic's denial of his

---

3. The record ... is replete with testimony to the effect that the potential loss of licensure is one of the most powerful motivating factors in persuading alcoholic professionals to struggle actively against the toils in which they find themselves.... [A] pure probationary sanction in this case would actually be counterproductive.... [T]he absence of any suspension as a sanction will encourage alcoholic lawyers in the belief that they can continue to slide along. Ironically, it might even lead them to conclude that they ought to continue to slide since they will be able to use their alcoholism as a shield ... leaving them actually better off than their sober colleagues. Report and Recommendation of the Board on Professional Responsibility at 14–15.

4. The probation conditions suggested by the Board are discussed *infra* at pp. 14–15.

5. APAL was allowed to intervene and participate in the Committee's hearings on remand.

APAL is an organization of lawyers and others, many of them recovering alcoholics, who have dedicated themselves to assisting alcoholic lawyers toward recovery. During its relatively short existence, APAL has done a great deal to educate both the Bar and this Board about the extent and nature of the problem presented by alcoholic lawyers. Although APAL has born various relationships to the unified Bar during its history, it is now formally related to the Bar and its activities, specifically screening and counselling by a full-time employee, will be partially funded by mandatory dues during the upcoming fiscal year.
Report and Recommendation of the Board on Professional Responsibility at 2 n. 1.

alcoholism—not the use of probation as a sanction—that encourages alcoholic lawyers to slide along.

Ultimately, it must be recognized that a mind warped by alcoholism does not perceive reality as it is, or act on it. A drinking alcoholic will not be deterred by a suspension in this or any other case because, even if he becomes aware of the suspension, he will not make a connection between the discipline and the implications for his own circumstances.

APAL's Brief at 19–20.

## II. *Kersey's History*

Franklin Kersey's problems with alcohol began almost as soon as he took his first drink. In high school, he repeatedly got drunk on weekends, becoming belligerent and combative. In college, Kersey missed classes and was eventually suspended because of excessive drinking.

In spite of his problem, Kersey was able to graduate from law school and become a very competent member of the D.C. Bar. In 1973, professors at Howard University told students to watch Kersey litigate and to analyze his trial technique. In the words of one observer, "He was good. Very good."

Even during this period in the early 1970's, Kersey drank often, and whenever he drank, he drank to excess. By the late 1970's, Kersey's condition had degenerated to the point where he frequently drank more than a fifth of rum in a single day. By 1984, Kersey's law practice was in complete disarray. He frequently missed court appearances or arrived late. He was unshaven, ill-dressed, and disheveled. His eyes were bloodshot and his breath smelled of alcohol or peppermint. When he was late for a court date, others would call Kersey at home to wake him or cover for his absence. When he did appear in court, often he was confused, unprepared, and could not identify his clients. Kersey had

no financial record-keeping system, failed to file Criminal Justice Act vouchers, and began to commingle client funds and to use them for his own purposes. Kersey was reprimanded and censured by the D.C. Bar for Code violations. In 1982, he was twice arrested for drunk driving and was involved in another alcohol-related accident. By 1984, alcohol completely dominated Franklin Kersey's life. He had experienced over 100 blackouts. Family, friends and colleagues tried to confront Kersey with his alcoholism, but their efforts were futile.

It was during the period 1980–82 that Kersey committed the twenty-four violations of the Code that we deal with today. Kersey committed four separate violations of DR 1–102(A)(4) (conduct involving dishonesty); five violations of DR 1–102(A)(5) (conduct prejudicial to the administration of justice by failure to respond to Bar Counsel's written investigative inquiries); one violation of DR 2–110(A)(2) (improper withdrawal without taking steps to avoid prejudice to the client); two violations of DR 6–101(A)(3) (neglect); one violation of DR 7–101(A)(1) (intentional failure to pursue the lawful objectives of client); one violation of DR 7–101(A)(3) (intentionally prejudicing client); three violations of DR 9–103(A) (commingling, two involving misappropriation of client funds); four violations of DR 9–103(B)(3) (failure to maintain complete records of client funds); and three violations of DR 9–103(B)(4) (failure to pay over client funds promptly). As the Board on Professional Responsibility noted, "[i]t is difficult to call to mind very many respondents who, in recent years, have been proven to have engaged [in] such a widespread and persistent pattern of violations of the ethics of our profession."[6]

Finally, faced with the Board on Professional Responsibility's recommendation that he be disbarred, and confronted and supported by members of APAL, Kersey

---

**6.** Report and Recommendation of the Board on Professional Responsibility at 3.

reluctantly entered a 28–day detoxification program at Pilot House in August 1984. Since then, Kersey has achieved and remained in a state of recovery. Both Dr. Charles Whitfield, a physician specializing in the treatment of professionals with drug or alcohol problems, and Richard Vincent, Executive Director of the Lawyers Counselling Program in Maryland, agree that Kersey now has the mental capacity to perform at his previous high professional level.

### III. *The Effect of Kersey's Alcoholism on his Professional Misconduct*

That Franklin Kersey is an alcoholic is beyond question. No individual or organization that has participated in these proceedings has claimed otherwise. Kersey's alcoholism has been amply documented by his own testimony, the testimony of friends and colleagues, and the expert opinions of professionals in the field.

The nature of alcoholism, and the level of culpability to which an alcoholic attorney should be held for his condition and resulting professional behavior, are questions of vital importance to the legal system. If Kersey had been insane at the time of his misconduct, he likely would not be facing charges of Code violations since he would not be responsible for his conduct. If Kersey's misconduct had been purely voluntary, he would surely be disbarred. But alcoholic behavior, unlike insanity on the one hand or ordinary conscious behavior on the other, is neither purely involuntary nor purely voluntary.[7] Individuals who eventually become physically addicted to alcohol, at some point, voluntarily chose to drink. Not all drinking alcoholics are totally unable to control their behavior. As the Board aptly noted, "[i]t is not enough to say that the offender is an alcoholic and *ipso facto* causation is proven. After all, not all alcoholic lawyers steal their client's money."[8] Furthermore, unlike recovery from an ordinary disease, the alcoholic's recovery is predicated on a choice to confront his or her problem, coupled with an

---

7. The causes of alcoholism, indeed even its definition, are the source of great debate in the scientific, medical, and mental health communities. Many groups and individuals, including the American Medical Association and Alcoholics Anonymous, define alcoholism as a disease. *See* Jellinek, *Disease Concept of Alcoholism* (1960); *Alcoholics Anonymous Comes of Age* (1957); R. Exhibit 8. For example, in 1975 the A.M.A. defined alcoholism as

> a disease characterized by the repetitive and compulsive ingestion of any sedative drug, ethanol representing but one of this group, in such a way as to result in interference with some aspect of the patient's life, be it health, marital status, career, interpersonal relationships, or other required societal adaptations.

R. Exhibit 8. The terms "preoccupation with alcohol" and "loss of control over its consumption," however, clearly indicate some behavioral aspects as opposed to the traditional organic or biological disease model. Some consider alcoholism to be a compulsive or addictive behavioral disorder. *See* Peele, *The Meaning of Addiction: Compulsive Experience and its Interpretation* 100 (1985); Larkin, *The Treatment of Alcoholism* 53, appendix A (1974). Still others simply view alcoholism "as a multi-faceted disorder involving environmental, cultural, psychological and biological factors." Franks, *New*

*Attack on Alcoholism,* N.Y. Times, Oct. 20, 1985, Magazine, at 64.

Researchers theorize that alcoholism may be caused by genetic, biological, or cultural factors (or a combination of all three). Studies show that children of alcoholics are much more likely to become alcoholics even if they are not raised with their natural parents. *See* U.S. Department of Health and Human Services, *Alcohol and Health* 15–19 (December 1983). However, other studies show that members of certain ethnic groups tend to become alcoholic at an even higher rate than children of alcoholics. *See* Peele, *supra,* at 33. Rates of alcoholism vary depending on age, socioeconomic status and race. *Id.* at 34. Other studies indicate that alcoholics may have fewer natural opiates, or have a greater sensitivity to stimuli (leading to a need to deaden the senses with alcohol), or have a greater capacity to quickly develop a tolerance to and dependence on alcohol. *Alcohol and Health, supra,* at 19. Alcoholics may also have an overabundance of an enzyme which, when alcohol is metabolized by the body, produces an excess of acetaldehyde, which in turn creates a morphinelike addiction to the alcohol. Franks, *supra,* at 50. Alcoholics may also have abnormal brain waves in that part of the brain associated with emotion and memory. *Id.* at 61.

8. Report and Recommendation of the Board on Professional Responsibility at 11.

appropriate supportive program.[9] Nevertheless, alcoholism can result in uncontrollable behavior and severe psychological and physiological changes.

In various contexts, the legal system implicitly recognizes something of the unique, dualistic nature of alcoholism. In some jurisdictions, including this one, chronic alcoholism is an absolute defense to charges of public intoxication.[10] But rarely is alcoholism a defense to criminal liability.[11] More commonly, it is recognized as a mitigating factor in sentencing[12] and in bar discipline.[13]

■ Today we hold that alcoholism is a mitigating factor to be considered in determining discipline. To fail to consider alcoholism as a mitigating factor would be to defy both scientific information and common sense. Excessive alcohol use affects the parts of the brain involving memory, emotion and higher level functioning. *Alcohol and Health, supra* note 7, at xv. Alcohol also interferes with the brain's electrical system and the neurotransmitters which convey thoughts, feelings and learning throughout the body. Franks, *supra* note 7, at 64. Chronic alcoholism may lead to Korsakoff's syndrome, characterized by severe memory loss, impaired learning, and brain injury, *Alcohol and Health, supra* note 7, at 28, or to alcoholic dementia. Alcoholic dementia, which is similar to Alzheimer's disease, results in a decline in abstracting abilities, problem solving and verbal expression.[14]

Alcohol also acts as a depressant. Alcoholics suffer from feelings of futility, and they exhibit signs of reality distortion, such as "paranoia, aggressiveness, extreme lack of confidence and an inability to accept criticism, or to see how their behavior is affecting others."[15] Franks, *supra* note 7, at 64. The judgment and attention span of alcoholics are similarly impaired. *Alcohol and Health, supra* note 7, at 39.

While we believe that it is an impossible burden to prove that Kersey's alcoholism caused each and every disciplinary violation, the fact that alcoholism has a severe effect on human physiology and behavior, along with the record evidence of Kersey's own behavior, establish that Kersey's professional conduct was substantially affected by his alcoholism. Kersey's alcohol abuse affected his thoughts and judgment. According to Dr. Whitfield, Kersey was in the late middle stage of alcoholism by the late 1970's. At that stage, the continued use of large amounts of alcohol results in the progressive impairment of the ability to think, remember, and make decisions. John Wright, director of treatment at Pilot House, testified that Kersey's thinking was delusional during his stay there. Dr. Hennigan, a psychiatrist experienced in treating alcoholics, also testified that Kersey showed poor judgment. Kersey himself testified that many of his thoughts and

9. We do not ignore the fact that many alcoholics require hospitalization and drug therapy to recover.

10. *See Salzman v. United States,* 131 U.S.App.D.C. 393, 399, 405 F.2d 358, 364 (1968) (except for a charge of public drunkenness, alcoholism is not *per se* a defense to a crime); *Driver v. Hinnant,* 356 F.2d 761 (4th Cir.1966).

11. However, evidence of a defendant's alcoholism may prove that the defendant lacked the requisite intent to commit the crime. *See Salzman, supra* note 10, 131 U.S.App.D.C. at 399, 405 F.2d at 364; *Heideman v. United States,* 104 U.S.App.D.C. 128, 131, 259 F.2d 943, 946 (1958), *cert. denied,* 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959).

12. *Salzman, supra* note 10, 131 U.S.App.D.C. at 404–06, 405 F.2d at 369–71 (Wright, J., dissenting).

13. *See supra* note 1.

14. Unlike Alzheimer's, alcoholic dementia is reversible to some degree with abstinence from alcohol. *Alcohol and Health, supra* note 7, at xv. Chronic alcoholics also suffer from brain shrinkage. Franks, *supra* note 7, at 64.

15. Alcoholism may cause various psychiatric illnesses including depression, anxiety, hysteria, sociopathy, drug abuse, and anorexia nervosa. However, "[w]hether psychopathology is the result of, or the cause of, alcoholism is sometimes difficult to determine." *Alcohol and Health, supra* note 7, at 29.

writings during this period were irrational and nonsensical.

 We agree with the Committee and the Board that a sufficient nexus between Kersey's alcoholism and his misconduct has been established. But for Kersey's alcoholism, his misconduct would not have occurred.[16] We hold that this "but for" test is the standard that must be met in order to prove causation in disciplinary cases involving alcoholism.[17]

## IV. *Discipline Imposed*

 We decline the opportunity in this opinion to write rules encompassing all future disciplinary cases involving alcoholism. These cases are necessarily decided on an individual basis. Factors that are generally considered in all disciplinary cases include the protection of the public, the vindication of public and private rights, and deterrence to the bar. Our purpose in imposing discipline is not to visit punishment upon an attorney. *In re James D. Hutchinson,* 518 A.2d 995, 1000 (D.C.1986). Ordinarily, the rehabilitation of the attorney's professional conduct does not play a major role in our choice of discipline. However, when alcoholism has been a causal factor leading to professional misconduct, rehabilitation from that condition will be considered a significant factor in imposing discipline. Deterrence, however, should not be considered a significant factor. Other alcoholic attorneys likely will fail to make

the connection between the sanctioned attorney's alcoholic condition and their own drinking problem, and between their own drinking and their professional behavior.[18] The record here is a testament to a pretreatment alcoholic's persistent and virtually unshakeable denial of his alcoholism.

 We have given careful consideration to the Board's view that a period of actual suspension should be imposed on Kersey. While we acknowledge its legitimate concerns about the appropriate message to be given to other alcoholic attorneys, we give recognition to the element of choice inherent in alcoholism by creating an incentive rather than imposing a penalty. We conclude that where there is significant evidence of rehabilitation, a period of actual suspension is not always mandated. Hence, in those cases where the Board contemplates a suspension period, it should examine evidence concerning the impact of the suspension on the respondent, with particular attention to its effect on the respondent's continued rehabilitation. After consideration of these factors, there may be situations where a period of suspension is justified.[19] In this case, however, we are convinced that the minimal deterrence value of suspension upon other alcoholic attorneys is substantially outweighed by the likely salutary effect upon Kersey's continued rehabilitation that continuation of his professional career will have.[20]

---

**16.** Like the Board, we are troubled by Kersey's own testimony that he intentionally neglected some clients' matters because these clients did not pay him. This is clearly an unacceptable rationale for unethical conduct. But, at this time, we accept the Board's conclusion that "the removal of the substantial contributory factor [i.e. active alcoholism] will end the offensive conduct." Report and Recommendation of the Board on Professional Responsibility at 11.

**17.** We note that many other jurisdictions, in considering attorney disciplinary cases, have found that an attorney's alcoholism was the cause of his professional misconduct. *See Attorney Grievance Commission of Maryland v. Aler,* 301 Md. 389, 483 A.2d 56 (1984); *Carter v. Ross,* 461 A.2d 675 (R.I.1983); *Tenner v. State Bar of California,* 28 Cal.3d 202, 168 Cal.Rptr.

333, 617 P.2d 486 (1980); *Matter of Walker,* 254 N.W.2d 452 (S.D.1977); *In re Lewelling,* 244 Or. 282, 417 P.2d 1019 (1966).

**18.** *See supra* p. 5.

**19.** We acknowledge the difficulty that the Board faces in deciding this issue since a respondent's rehabilitation period likely will have been short when the Board makes its recommendation. By the time this court hears and decides a case, a respondent's recovery will have been longer, and one of the reasons for a period of suspension may diminish.

**20.** Improvement of social and occupational functioning is an important aspect of the often neglected aftercare required for successful treatment of alcoholism. *Alcohol and Health, supra* note 7, at 114.

Today we reject in part, and accept in part, the Board's recommended discipline. We "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted."[21] We believe that a one-year period of actual suspension is unwarranted. There are occasions where it is appropriate for this court, after consideration of the Board's recommendation, to make its own determination of proper discipline. This is such a case.

Accordingly, we order Franklin Kersey disbarred. We stay the execution of his disbarment and place Kersey on probation for five years pursuant to D.C. Bar R. XI § 3(f) (1986). We adopt the probation conditions suggested by the Board, which are as follows:

1. Total abstinence from the use of alcohol to be verified by a sobriety monitor. The sobriety monitor has the right to require that Kersey attend A.A. Lawyer's Group meetings and he should take whatever steps are necessary to ensure that Kersey remain abstinent.

2. Supervision of Kersey's professional conduct by a practice monitor.

3. Supervision of Kersey's professional financial activities by a financial monitor. The financial monitor will be a joint signatory on any trust account maintained by Kersey. The monitor will also have access to all of Kersey's personal and professional financial records.

Each monitor shall oversee Kersey's activities for four years and periodically report Kersey's progress to the full Board. We accept the Board's recommendation of Thomas E. Patton as the practice monitor and Terrence Birkel as the financial moni-

tor. We thank each of these gentlemen for volunteering their time for these tasks. We will also accept the Board's choice for a sobriety monitor.[22]

If APAL, Bar Counsel, or any monitor learns that Kersey has violated a probation condition or the Code of Professional Responsibility, he or she will report the violation to Hearing Committee Six, which will then investigate the alleged violation. If a violation is found, Kersey will be suspended from practice immediately. The Board will then determine whether or not Kersey's violation requires probation revocation.[23] Any party will have the right to petition the Board for a stay of the suspension pending its decision. The Board's decision on revocation may then be appealed to this court.

*So ordered.*

---

21. D.C. Bar R. XI § 7(3) (1986).

22. The record does not reflect that the Board has chosen a sobriety monitor in this case. We give the Board sixty days from the date of this opinion to advise this court of its choice for sobriety monitor.

23. We recognize that the path to recovery from alcoholism is not always a straight and narrow one. Thus, any violation will not necessarily mandate revocation of Kersey's probation.