**In re James L. O'DEA, III, Respondent.**

**No. 84–460.**

District of Columbia Court of Appeals.

Oct. 31, 1988.

Before NEWMAN and BELSON, Associate Judges, and GALLAGHER, Senior Judge.

ORDER

In our order of July 20, 1988, we remanded the record in this case to the Board on Professional Responsibility for further proceedings in relation specifically to whether the Board's recommended suspension should be imposed *nunc pro tunc* to the date of respondent's disability suspension from the bar. The Board has now filed with the court its Report and Recommendation on Remand.

We consider the recommendation in the Report to be generally sound and well considered. Accordingly, it is

ORDERED that the Report and Recommendation of the Board on Professional Responsibility is approved and will be appended to this order of the court, and it is

FURTHER ORDERED that Respondent shall undergo a three-month suspension from the Bar, but that this suspension shall run *nunc pro tunc* from the date on which he was given an automatic disability suspension.

APPENDIX

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket Numbers 53–82, 54–82 and 113–84

In the Matter of: James L. O'Dea, III, Respondent

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY ON REMAND

This matter is before the Board on Professional Responsibility on remand from the District of Columbia Court of Appeals pursuant to an order dated July 20, 1988. The court directed the Board to submit its recommendation on "the rather novel question before the Court," *i.e.,* whether the recommended three-month suspension of Respondent for misconduct in violation of the Code of Professional Responsibility should be imposed *nunc pro tunc* to the date on which Respondent was given an automatic disability suspension based on his contention that he could not adequately defend himself in the then pending appeal in this disciplinary case (hereafter "remand question").

The Board has reached two main conclusions. First, the legal standard for resolving the remand question is found in the language of Section 16(4) of Rule XI, which provides in relevant part that the court "shall take such action as it deems proper and advisable, including a direction for the resumption of the disciplinary proceeding against the Respondent." This broad legal standard requires an evaluation and balancing of all pertinent factors based on the

particular facts and circumstances in each case. There can be no universal rule, one way or the other, for acceptance or rejection of the *nunc pro tunc* principle in this type of situation. Each case must be judged on its individual merits.

Second, the Board's analysis of the specific facts and circumstances of this case has led to the conclusion that the recommended three-month suspension for Respondent's prior unethical conduct should be imposed *nunc pro tunc* to the date on which Respondent voluntarily obtained a disability-related suspension.

## I. *CHRONOLOGY OF KEY EVENTS*

This case has a long and convoluted history, as set forth in the following chronology of key events:

*March 9, 1984.* The Board issued its Report and Recommendation in the underlying disciplinary proceeding, in which the record established serious instances of gross neglect extending over a period of more than a year and resulting, in one case, in a default judgment against Respondent's client. Moreover, Respondent had a prior disciplinary record involving neglect. The Board recommended three months suspension as the appropriate sanction for these violations of the Code of Professional Responsibility.

*October 15, 1984.* Respondent submitted a petition contending that he was then suffering from a medical disability which made it impossible to defend himself in this disciplinary proceeding then pending on appeal before the court. Whenever any respondent advances such a contention, it automatically triggers Section 16(4) of Rule XI, which provides that "the court thereupon shall enter an order immediately suspending the Respondent from continuing to practice law until a determination is made of Respondent's capability" to resume the practice of law. A related provision of Section 16(3) requires that "any pending disciplinary proceeding against the attorney shall be held in abeyance."

*November 8, 1984.* The court entered an order in accordance with the applicable provisions of Section 16 of Rule XI. The court's order provided that Respondent was "suspended from the practice of law ... until a determination is made with respect to Respondent's capability to continue to practice law," and the order further provided that the underlying disciplinary "proceedings against Respondent shall be held in abeyance." Accordingly, Respondent's appeal then pending before the court in the disciplinary proceeding was held in abeyance.

*February 26, 1986.* Respondent filed an application for reinstatement, based on the allegation that "Respondent is now ... medically able to return to the practice of law."

*October 10, 1986.* The court entered an order whereby Respondent was reinstated to the practice of law effective immediately. This action by the court was based on the Board's report in the reinstatement proceeding, which accepted the factual findings of a Hearing Committee and recommended reinstatement.

*December 4, 1987.* The court entered an order granting Bar Counsel's motion filed on September 11, 1987. As requested in Bar Counsel's motion, the court authorized resumption of the underlying disciplinary proceeding that had been held in abeyance pursuant to the court's order of November 8, 1984. Bar Counsel thereafter submitted a brief urging the court to impose the sanction previously recommended by the Board in the underlying disciplinary proceeding, *i.e.*, three months suspension. Respondent's brief argued, *inter alia*, that the underlying disciplinary proceeding should be dismissed in its entirety on the ground that the intervening disability suspension for a period in excess of one year had mooted the disciplinary violations for which only three months suspension would be warranted.

*July 12, 1988.* The court heard oral argument on the issues presented by the parties' briefs in the resumed disciplinary proceedings previously held in abeyance due to Respondent's disability suspension. The court also specifically "requested that the parties address at oral argument the

question of whether the Board's recommended three-month suspension should be imposed *nunc pro tunc* to the date of Respondent's disability suspension."

*July 20, 1988.* The court remanded the resumed disciplinary matter to the Board for its consideration and recommendation on the same question that the parties were asked to address at oral argument, *i.e.*, the *nunc pro tunc* issue herein called the remand question.

## II. *BOARD'S ANALYSIS OF THE REMAND QUESTION*

In its consideration of the remand question, the Board has addressed both the legal standard and its application to the particular facts and circumstances of this case.

### A. *Legal Standard*

This disciplinary proceeding was initiated by Bar Counsel in a routine manner in accordance with applicable provisions of Rule XI and the Board Rules. Bar Counsel's charges against Respondent were upheld by this Board, which recommended three months suspension as the appropriate sanction. Respondent appealed. While the matter was still pending before the court, Respondent advanced the contention that he was suffering from a medical disability that made it impossible for him adequately to defend himself in the disciplinary proceeding then on appeal. Under Section 16 of Rule XI, such a contention automatically triggers an order from the court (1) immediately suspending the respondent from the practice of law until a determination is made of his capability to resume such practice, and (2) holding in abeyance any pending disciplinary proceeding. In the instant case, the court's order of November 8, 1984 was entered pursuant to this automatically triggered provision of Rule XI.

After Respondent's disability suspension had been in effect for slightly more than a year, Respondent applied for reinstatement on the ground he was no longer incapacitated from practicing law. On October 10, 1986, Respondent's application for reinstatement was granted by this court.

The above brief recitation of the history of this case confirms that it is now in a posture that fits squarely within the provisions of the last sentence in Section 16(4) of Rule XI:

> If, in the course of a proceeding under this Rule or in a disciplinary proceeding, the court shall determine that the respondent is not incapacitated from practicing law, it shall take such action as it deems proper and advisable, including a direction for the resumption of the disciplinary proceeding against the respondent.

Thus, the controlling legal standard for resolving the remand question is "proper and advisable." It is comparable to the broad criteria that the court has developed in its case law defining the basic purposes, and related factors to be considered, in imposing sanctions in regular disciplinary cases involving violations of the Code of Professional Responsibility.

Shortly after this jurisdiction's disciplinary system was established by Rule XI, the court concluded that the determination of appropriate discipline "emerges from a forest of varying considerations, many of which may be unique to the given case." *In re Smith,* 403 A.2d 296, 303 (D.C.1979). Although the court established in Section 7(3) of Rule XI a basic "mandate to achieve a rough equality" of sanctions for comparable misconduct, the court has nonetheless stressed that "each case must be decided on its particular facts." *In re Haupt,* 442 [422] A.2d 768, 771 (D.C.1980). As summarized in a recent *en banc* opinion of the court:

> The discipline we impose should serve not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct.... In all cases, our purpose in imposing discipline is to serve the public and professional interests we have identified, rather than to visit punishment upon an attorney.

*In re Reback,* 523 [513] A.2d 226, 231 (D.C. 1986) (*en banc*).

The Board concludes that these broad principles applicable to determining appropriate discipline militate against any hard and fast rule on the novel question present-

ed by the court's remand order in this case. Depending on the particular facts and circumstances in a given case, acceptance of the *nunc pro tunc* principle might be fully justified, whereas in other cases the opposite might be true. For example, if the evidence were to show that a respondent deliberately attempted to manipulate the disciplinary process—by triggering an automatic disability suspension in an effort to thwart the likelihood of more onerous sanctions in a then-pending disciplinary proceeding—there would be a strong basis for rejecting the *nunc pro tunc* principle. Acceptance of the principle under those circumstances would actually encourage a contrived allegation or contention of disability in order to trigger an automatic disability suspension with the expectation of circumventing a more onerous sanction on the merits of the underlying disciplinary charges.

In cases such as this one, where a question is raised concerning application of the *nunc pro tunc* principle, the Board believes that several factors are relevant:

1. The nature and seriousness of the misconduct in the underlying disciplinary case;

2. The probable sanction, or range of sanctions, that would be justified for the alleged misconduct in the underlying disciplinary proceeding;

3. The strength of the medical evidence (as distinct from respondent's self-declared contention) underlying the disability suspension;

4. The length of the disability suspension at the time of respondent's request for applying the *nunc pro tunc* principle;

5. Respondent's good faith, or lack thereof, in obtaining the disability suspension during the pendency of a disciplinary proceeding; and

6. The relationship, if any, between respondent's misconduct and disability.

In individual cases, there may be still other factors that would be relevant to acceptance or rejection of the *nunc pro tunc* principle. However, in most cases, some or all of those listed above will merit evaluation.

## B. *Board's Evaluation of Relevant Factors in This Particular Case*

The Board's analysis of relevant factors, in light of the particular facts and circumstances of this case, has led to the conclusion that the *nunc pro tunc* principle should be accepted. Accordingly, the Board recommends that in the resumed disciplinary proceeding previously held in abeyance due to Respondent's disability, the court should now enter an order (1) upholding the Board's findings of Respondent's violations of the Code of Professional Responsibility; and (2) suspending Respondent from the practice of law for three months effective *nunc pro tunc* to November 8, 1984, the date on which Respondent was suspended based on his contention that he was suffering from a disability that prevented him from defending this disciplinary case.

In arriving at this recommendation, the Board considered, and rejected, Respondent's position that his disability suspension warrants the complete dismissal of all charges in the underlying disciplinary case. Respondent's contention is untenable, regardless of whether the evidence could be viewed as showing that Respondent's disciplinary violations would not have occurred "but for" the medically-related disability. Under the court's landmark opinion in *In re Kersey*, 520 A.2d 321 (D.C.1987), the court expressly held "that a disability due to alcoholism is a mitigating factor to be considered in determining discipline," but it does not wipe out the underlying disciplinary violations altogether. Indeed, the basic sanction in *Kersey* was disbarment, which was appropriate for the misconduct in that case in the absence of mitigation due to alcoholism. The court simply fashioned an order conditionally mitigating the normal sanction.[1]

By analogy, a similar approach should be used in deciding the remand question in this case. The court should impose the appropriate sanction for Respondent's misconduct (three-months suspension), and

---

**1.** The *Kersey* opinion teaches that clear and convincing evidence of a "but for" causal relationship between the attorney's misconduct and disability is essential for mitigation of sanctions.

then consider whether the particular facts and circumstances relating to Respondent's disability suspension justify acceptance of the *nunc pro tunc* principle.

Here, Respondent's disciplinary violations were serious and prolonged, and occurred after Respondent had received an informal admonition in a prior disciplinary case. For the reasons set forth in the Board's initial Report in this case, the appropriate sanction for Respondent's violations is suspension for three months. As a result of the voluntary disability suspension in this case, however, Respondent has been suspended for a period in excess of one year, and such suspension went into effect on a date earlier than suspension would have commenced in the underlying disciplinary proceeding.

The record contains no evidence suggesting that respondent's medical problems— which formed the basis for his disability contention—were not bona fide. To the contrary, there is ample evidence that Respondent was then suffering from depression, hypertension and obesity.

Even more important is the fact that the record shows, and Bar Counsel does not dispute, that Respondent had no intent to evade the normal disciplinary process when he requested a disability suspension. Accordingly, acceptance of the *nunc pro tunc* principle in this case will not create an incentive for other attorneys to attempt to circumvent the disciplinary process.

The Board's analysis has revealed only one aspect in which Respondent's disability suspension perhaps could be viewed as more "favorable" than the recommended three-month suspension for violations of the Code of Professional Responsibility. If the court had promptly imposed the recommended three-month suspension without any superseding disability suspension, Respondent would have been required to notify his clients of his disciplinary-related suspension and would not have been able to

explain it on grounds of medical disability. As events turned out, Respondent was suspended for medical reasons and was thereafter reinstated *before* the underlying disciplinary proceeding could be completed. Thus, acceptance of the *nunc pro tunc* principle will allow Respondent to avoid, for all practical purposes, the embarrassment and stigma of having to attribute his suspension to unethical conduct. Under the peculiar circumstances of this case, however, the Board does not believe that this factor justifies rejection of the *nunc pro tunc* principle.

In arriving at this conclusion, the Board has taken into account the fact that Bar Counsel delayed resumption of the underlying disciplinary proceeding for almost a year *after* Respondent's application for reinstatement was accepted by the court. Indeed, Bar Counsel knew in February 1986 that Respondent was then contending that he had recovered from his disability, and yet Bar Counsel did not attempt to resume the disciplinary proceeding until September 1987, more than a year and a half later.

The Board has also recognized that its own internal procedures, as reflected in the Board Rules, have only recently been amended to include specific procedures for addressing disability-related matters, such as mitigation for alcoholism disability under *Kersey* and the medical disability in this case. These recently adopted provisions in the Board Rules will provide, both for Bar Counsel and respondents, a better roadmap to follow in dealing with all disability matters within the scope of Section 16 of Rule XI, and this should assist the parties to avoid the delay that has occurred in this case.

Finally, the Board has considered the position of Bar Counsel on the remand question. Specifically, Bar Counsel does not oppose the application of the *nunc pro tunc* principle on the particular facts of this case.

---

It would be anomalous indeed to have a legal rule, derived from the *nunc pro tunc* principle, that would allow the complete dismissal of charges where, as here, the evidence justifies no more than a weak inference of such a "but for" causal relationship. On the other hand, it is the Board's view that a "but for" causal relationship

is a relevant factor to consider in accepting, or rejecting, the *nunc pro tunc* principle in a case such as this one, but the presence or absence of a "but for" causal relationship, standing alone, is not conclusive as to application of the *nunc pro tunc* principle.

In sum, when all relevant factors are considered, the balance of the equities weighs heavily in favor of accepting the *nunc pro tunc* principle in this case.

## CONCLUSION

For the foregoing reasons, the Board recommends that the court enter an order in the resumed disciplinary case herein (1) upholding the Board's findings with respect to Respondent's violations of the Code of Professional Responsibility, as set forth in the Board's report issued on March 9, 1984; and (2) suspending Respondent from the practice of law for a period of three months effective *nunc pro tunc* to the date of Respondent's disability-related suspension on November 8, 1984.

> FOR THE BOARD ON PROFESSIONAL RESPONSIBLITY
> /s/ J. Randolph Wilson
> J. RANDOLPH WILSON
> Chair

All members of the Board concur in this opinion except Messrs. Carter and Freund who did not participate.

Dated: August 8, 1988.