**In re Joel B. HOPMAYER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 89–1425.

District of Columbia Court of Appeals.

Submitted March 12, 1991.
Decided Jan. 28, 1992.

---

Marion E. Baurley, Washington, D.C., filed a brief for respondent before the Bd. on Professional Responsibility.

Thomas E. Flynn, Bar Counsel at the time the brief was filed, and Renee Franklin Hill, Asst. Bar Counsel, Washington, D.C., filed a brief for the Office of Bar Counsel before the Bd. on Professional Responsibility.

Before ROGERS, Chief Judge, and TERRY and WAGNER, Associate Judges.

TERRY, Associate Judge:

In January 1990 this court suspended respondent Hopmayer from the practice of law in the District of Columbia, pending a formal proceeding before the Board on Professional Responsibility ("the Board") to determine the final discipline to be imposed. We did so upon receipt of a judgment of the Superior Court of Union County, New Jersey, which informed us that Hopmayer had been convicted on October 20, 1989, of "theft by failure to make required disposition of property received," following a plea of guilty to an indictment charging that offense.[1] Specifically, Hopmayer pleaded guilty to "receiving and treating as his own, funds totaling $275,236.61, which was subject to a known legal obligation to make a specified payment or other legal obligation" and then failing to pay that money to his former law partners. The New Jersey court sentenced Hopmayer to a term of five years' imprisonment and ordered him to pay $275,236.61 in restitution.

The Board, after receiving briefs from Hopmayer and from Bar Counsel, concluded that the crime of which he was convicted inherently involved moral turpitude, and recommended that Hopmayer be disbarred pursuant to D.C.Code § 11–2503(a) (1989). We agree that Hopmayer's crime, a felony under New Jersey law, inherently involved moral turpitude, but we remand the case to the Board so that it may consider an issue which it has not yet addressed in this or any other case.

I

In determining whether to recommend disbarment under D.C.Code § 11–2503(a)[2] of an attorney who has been convicted of a felony, the Board makes "an

1. N.J.STAT.ANN. § 2C:20–9 (West 1982) provides in pertinent part:
   A person who purposely obtains or retains property upon agreement or subject to a known legal obligation to make specified payment or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he deals with the property obtained as his own and fails to make the required payment or disposition.

2. For a brief discussion of the difference between disbarment under section 11–2503(a) and "ordinary" disbarment, *see In re Rosenbleet,* 592 A.2d 1036, 1037 n. 3 (D.C.1991).

initial determination as to whether the attorney's crime inherently involves moral turpitude." *In re Colson,* 412 A.2d 1160, 1164 (D.C.1979) (en banc); *see In re McBride,* 602 A.2d 626, 634–35 (D.C.1992) (en banc).[3] If the Board answers that question in the affirmative, that is the end of the Board's inquiry, and it must recommend disbarment. *In re Colson, supra,* 412 A.2d at 1164.

■ If this court has previously held that the crime at issue inherently involves moral turpitude, then the Board is bound by that holding. In such a case, the hearing before the Board is limited to determining whether the certificate of conviction provided to the Board establishes that the attorney has in fact been convicted of the crime charged. But if we have not so held, the Board may consider briefs and argument on the issue of whether the crime involves moral turpitude. *Id.* at 1165. It should come as no surprise that this court has not yet decided whether "theft by failure to make required disposition of property received," a statutory crime in another jurisdiction, inherently involves moral turpitude. We have consistently held, however, that a crime of which intent to defraud is an essential element falls within this category. *In re Bond,* 519 A.2d 165, 166 (D.C.1986) (citing cases).[4] "It is also settled that the related group of offenses involving intentional dishonesty for purposes of personal gain are crimes involving moral turpitude." *In re Hallinan,* 43 Cal.2d 243, 247, 272 P.2d 768, 771 (1954) (citations omitted), cited with approval in *In re Willcher,* 447 A.2d 1198, 1200 (D.C. 1982); *accord, In re Kent,* 467 A.2d 982, 984 (D.C.1983). The Board, following our case law, concluded that Hopmayer had been "convicted of a crime involving moral turpitude *per se.*"

That ruling was plainly correct. By pleading guilty to the crime of "theft by failure to make required disposition of property received," Hopmayer admitted that he had (1) purposely[5] obtained property subject to a known legal obligation to make specified payment or other disposition, (2) purposely[6] dealt with the property as his own, and (3) purposely failed to make the required disposition. *State v. Kelly,* 204 N.J.Super. 283, 287, 498 A.2d 784, 787 (1985). That constitutes intentional dishonesty for personal gain, which inherently involves moral turpitude. *In re Kent, supra,* 467 A.2d at 984; *In re Willcher, supra,* 447 A.2d at 1200.

Ordinarily, our holding to that effect would be the end of the case. We would adopt the Board's recommendation and order Hopmayer's disbarment pursuant to D.C.Code § 11–2503(a). For the reasons that follow, however, we remand this case to the Board for further proceedings.

## II

Hopmayer asserted in his brief before the Board that his crime was the result of

---

3. "[A] distinction must be drawn here between offenses which manifestly involve moral turpitude by virtue of their underlying elements, and those which do not.... The threshold focus of [section 11–2503(a) ], then, is on the *type* of crime committed rather than on the factual context surrounding the actual commission of the offense." *In re Colson, supra,* 412 A.2d at 1164 (emphasis in original).

4. Our recent decision in *In re McBride, supra,* modifies this rule to the extent that a misdemeanor of which an intent to defraud is an essential element no longer is deemed to be a crime that inherently involves moral turpitude. *McBride,* however, does not affect this case because Hopmayer was convicted of a felony.

5. N.J.Stat.Ann. § 2C:2–2(b)(1) (West 1982) provides in pertinent part:

A person acts purposely with respect to the nature of his conduct or a result thereof if it his conscious object to engage in conduct of that nature or to cause such a result.

As we read this statute, "purposely" means the same as "intentionally" in determining criminal liability.

6. N.J.Stat.Ann. § 2C:2–2(c)(1) (West 1982) provides in pertinent part:

When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

Thus a person commits the crime of theft by failure to make required disposition of property received by purposely (intentionally) engaging in each of the three elements.

his alcoholism, which caused him to reach a point "where he appeared unable to distinguish between acceptable and unacceptable behavior or to be able to control his conduct." He further alleged that, before pleading guilty in New Jersey, he had entered and successfully completed an inpatient alcohol treatment program. These allegations are at least sufficient to raise a question whether Hopmayer's alcoholism should be considered as a factor in mitigation of the disciplinary sanction to be imposed on him. *See In re Kersey,* 520 A.2d 321, 326 (D.C.1987).

There is, of course, an obvious and perhaps controlling difference between *Kersey* and the instant case. *Kersey* involved disbarment under D.C.Bar Rule XI, which permits a sanction less severe than disbarment. This case, however, arises under D.C.Code § 11–2503(a), which mandates disbarment upon conviction of a crime involving moral turpitude; no lesser sanction is available. *In re Colson, supra,* 412 A.2d at 1164. This court has not yet decided whether a lawyer's alcoholism may ever be taken into account as a factor mitigating mandatory disbarment under section 11–2503(a); this is, in fact, the first case since *Kersey* in which this issue has been presented. The Board did not address it, and, except for Hopmayer's factual allegations of alcoholism, none of the parties discussed it in their briefs.

We think that the issue of whether alcoholism can ever mitigate disbarment under D.C.Code § 11–2503(a) should be decided in the first instance by the Board, after briefing by the parties. We therefore remand this case to give the parties an opportunity to brief, and the Board an opportunity to consider, the effect (if any) of Hopmayer's alleged alcoholism on the imposition of discipline in this case. Should the Board determine that alcoholism may be a mitigating factor in disbarment cases arising under section 11–2503(a), notwithstanding *In*

*re Colson,* it would then need to apply the *Kersey* analysis to determine whether mitigation is warranted for Hopmayer and, if so, what alternative sanctions may be available.

### III

This case is accordingly remanded to the Board on Professional Responsibility for further proceedings consistent with part II of this opinion.

*Remanded.*[7]

WAGNER, Associate Judge, dissenting:

I respectfully dissent from the court's disposition of the case. In my opinion, consideration of mitigating factors by the Board or by this court is precluded under the law as interpreted by our decisions. Once the Board determines that the crime for which an attorney stands convicted inherently involves moral turpitude, further inquiry by the Board is at an end, and the Board is required to recommend, as it did, disbarment. *In re Colson,* 412 A.2d 1160, 1164 (D.C.1979) (en banc). Once this court concludes that an attorney has been convicted of a crime which inherently involves moral turpitude, it is compelled to order disbarment. D.C.Code § 11–2503(a) (1989); *Colson,* 412 A.2d at 1169; *In re Willcher,* 447 A.2d 1198 (D.C.1982). "[O]nly in a disciplinary proceeding based upon the conviction of a crime, where the nature of the crime is not such as plainly and unquestionably offends the generally accepted moral code, must evidence as to the circumstances of the crime including the actor's knowledge and intention be admitted." *Colson,* 412 A.2d at 1167. The holding of the majority resolves that the offense of conviction in this case does not fall into that category. Here, respondent claimed in mitigation that alcoholism caused him to reach a point "where he appeared unable to distinguish between acceptable and unac-

---

7. Our dissenting colleague suggests that we have decided that Hopmayer's crime is not one which inherently involves moral turpitude. To the contrary, we conclude that it does fall within that category. Where we part company with the dissent is over the applicability of *Kersey* when an attorney is otherwise subject to automatic disbarment under D.C.Code § 11–2503(a). That is an issue which we expressly leave open, pending further proceedings before the Board on remand.

ceptable behavior or to control his conduct." To the extent that these factors go to the circumstances of the crime, including intent and knowledge, they are irrelevant. *Id.* To the extent that respondent asks for consideration of his alcoholism in mitigation of sanction, it is not pertinent to the required disposition of disbarment. Therefore, a remand to the Board for the purpose of its consideration of mitigating factors is inconsistent with current law. In my opinion, only the en banc court can reach the result reached by the court today. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). Therefore, I am constrained to dissent.