**In re Claude N. STUART, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 06–BG–378.

District of Columbia Court of Appeals.

Submitted Dec. 11, 2007.
Decided Feb. 7, 2008.

---

**3.** *See In re Berger,* 737 A.2d 1033, 1045–46 (D.C.1999) (discussing possible vacatur of the fitness requirement).

Before RUIZ and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

RUIZ, Associate Judge:

In this reciprocal discipline case, the Board on Professional Responsibility recommends that Claude N. Stuart, a member of our bar, be suspended for three years, the identical sanction imposed by the Appellate Division of the New York Supreme Court. The Board also recommends that respondent be subject to a fitness requirement as a condition of reinstatement. Neither Bar Counsel nor respondent has excepted to these recommendations, which we adopt.

In May 2002, respondent, who was an Assistant District Attorney in Queens County, New York, failed to produce to the defense a police report concerning a witness believed to have exculpatory information in a homicide case before Supreme Court Justice Jaime A. Rios. Faced with a direct inquiry from the court before trial regarding the witness's whereabouts, respondent falsely stated that he did not know, despite having previously located and met with the witness at her place of employment the previous week. Respondent failed to correct this misinformation at trial. As a result, the case had to be retried.

Based on this misconduct, the New York Supreme Court, Appellate Division, Second Department, held that respondent should be suspended from the practice of

law for three years with a requirement that he petition for reinstatement before resuming the practice of law. *See In re Stuart*, 22 A.D.3d 131, 803 N.Y.S.2d 577, 579 (N.Y.App.Div.2005).[1]

District of Columbia Bar Counsel opened an investigation of respondent upon receipt of his November 28, 2005 letter, self-reporting the suspension in New York. On April 21, 2006, Bar Counsel filed with this court a certified copy of the New York order along with a proposed order to suspend respondent on an interim basis, pursuant to D.C. Bar R. XI, § 11(d). By Order dated May 15, 2006, we suspended respondent from the practice of law in the District of Columbia pending final disposition of this matter and directed Bar Counsel to report its position regarding reciprocal discipline.

On June 15, 2006, Bar Counsel filed its statement with the Board recommending that respondent be suspended for a period of three years with reinstatement conditioned on a showing of fitness. Respondent did not file a response opposing Bar Counsel's recommendation.

The Board recommends the imposition of identical reciprocal discipline in the form of a three-year suspension with a fitness requirement as a condition of reinstatement, to be effective immediately but deemed to commence for purposes of reinstatement on the date respondent files an affidavit that fully complies with D.C. Bar R. XI, § 14(g). "Under Rule XI, § 11(c) of this court's Rules Governing the Bar, '[r]eciprocal discipline shall be imposed unless the attorney demonstrates, by clear

**1.** After the Board filed its Report and Recommendation, both the New York Court of Appeals and the United States Supreme Court denied respondent's motion for leave to appeal and for writ of certiorari, respectively. *See Stuart v. Grievance Comm. for the Second and Eleventh Judicial Dists.,* — U.S. —, 127 S.Ct. 274, 166 L.Ed.2d 152 (2006); *In re Stuart,* 6 N.Y.3d 715, 823 N.Y.S.2d 356, 856 N.E.2d 920 (2006). Thus, we need not address the Board's argument on whether our action in this matter should be delayed until disposition of respondent's appeals of the New York sanction.

and convincing evidence,' that the case falls within one or more of five specifically enumerated exceptions." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992). "The rule thus creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *Id.* (Footnote omitted). We have held that the presumption for imposing identical discipline is a strong one, reflecting "not only the notion that another jurisdiction has already afforded the attorney a full disciplinary proceeding, but also the idea that there is merit in according deference ... to the actions of other jurisdictions with respect to the attorneys over whom we share supervisory authority." *In re Zdravkovich*, 831 A.2d 964, 969 (D.C.2003).

Neither Bar Counsel nor respondent has excepted to the Board's findings and recommendations. "Where respondent has not objected to the [identical] discipline proposed by the Board, the court's ordinarily deferential standard is even more deferential." *In re Brown*, 912 A.2d 568, 571 (D.C.2006). In such situations, the "imposition of identical discipline should be close to automatic, with minimum review by ... this court." *In re Childress*, 811 A.2d 805, 807 (D.C.2002) (quoting *In re Cole*, 809 A.2d 1226, 1227 n. 3 (D.C.2002)). Here, respondent made false representations to the New York court about his knowledge of the whereabouts of a witness the defense wished to contact in a murder case. As the New York court noted in its order suspending respondent, "respondent made a costly misrepresentation to the trial court which necessitated the retrial of the criminal action involving a major felony."

■ Dishonesty by attorneys to the court is very serious misconduct, with sanctions ranging up to and including disbarment. *See In re Goffe*, 641 A.2d 458 (D.C.1994) (per curiam) (ordering disbarment for attorney's creation of evidence, falsification of documents, and forgery of signatures and notarizations on legal documents). We see no evidence of record suggesting that respondent has been denied due process or that there is an infirmity of proof in this case. Neither is there evidence suggesting that respondent would have received substantially different discipline had his case originated here. In this case, the imposition of identical reciprocal discipline does not reflect an obvious miscarriage of justice. Thus, the presumption of identical discipline applies to the facts at hand.

■ Although the gravity of respondent's misconduct, particularly when viewed in the context of his prior disciplinary history set out in Judge Kramer's concurrence, could well have merited disbarment, we note that the Board recommends not only a three-year suspension but also a showing of fitness as a condition of reinstatement. That condition reflects the serious doubt that exists about respondent's fitness to meet his responsibilities to the court and to the defendants in his practice as a prosecutor. Moreover, the requirement to prove fitness is an adequate component of identical reciprocal discipline since a suspended attorney in New York must make the same showing pursuant to N.Y. COMP.CODES R. & REGS. tit. 22, § 691.11 (2007). *See In re D'Onofrio*, 764 A.2d 797, 798 n. 1 (D.C.2001) (per curiam) (finding that the "fitness requirement is functionally equivalent to the showing required by the Appellate Division" for reinstatement in New York). Therefore, we hold that respondent is required to show proof of fitness to practice law before his reinstatement in this jurisdiction.

■ Finally, the Board recommended— for purposes of *nunc pro tunc* treatment—

that respondent be allowed to supplement the affidavit he filed through counsel on May 25, 2006, to comply with the requirements of D.C. Bar R. XI, § 14(g) by making clear whom he notified of his suspension, that he has no private clients to notify, or (if he did have any clients) that he has notified them, as well as adverse parties, and that he has returned any client property. However, this supplemental affidavit was not filed within the ten days suggested in the Board's Report and Recommendation, and to the best of our knowledge, it has not been filed at all. Thus, when "seeking reinstatement to the Bar, respondent's [suspension] shall not be deemed to begin until he files such affidavit." *In re Dixon,* 763 A.2d 730, 732 (D.C. 2000); D.C. Bar R. XI, 16(c). Accordingly, it is

**ORDERED** that Claude N. Stuart be, and is hereby, suspended from the practice of law in the District of Columbia for a term of three years. For purposes of reinstatement, the period of suspension will not be deemed to commence until respondent files an affidavit conforming to the requirements of D.C. Bar R. XI, § 14(g). Moreover, reinstatement is conditional on a showing of respondent's fitness to resume the practice of law.

*So ordered.*

KRAMER, Associate Judge, concurring:

I write separately to express my agreement with the view of my colleague, Judge Nebeker, that a prosecutor who, in response to a question from the court, falsely denies having knowledge of the location of a witness with information possibly exculpatory to a defendant deserves more than a three-year sanction and serious consideration of disbarment. This is particularly true when the prosecutor has previously been cautioned about similar improprieties. Indeed, as the Opinion and Order of the New York Appellate Division of the State Supreme Court (attached to the Board's Report) relates, Stuart received a Letter of Caution from a New York Grievance Committee in 1999 for prosecutorial misconduct that resulted in the reversal of convictions for murder, robbery and weapons possession. The details of that case are outlined in *People v. Walters,* 251 A.D.2d 433, 674 N.Y.S.2d 114 (1998). The misconduct involved Stuart's (1) "insinuation [to the jury] that the gun which had been recovered from the defendant two weeks after the crime in an unrelated arrest [ ] may have been the gun which was used to shoot the victim," despite Stuart's "knowledge that the ballistics test performed by police conclusively established that the gun had not been used in the crime," *id.* at 116; (2) improper inflammatory remarks that he "persist[ed] in making" that were "designed to appeal to the jury's sympathy," including his statement that "the victim was left 'on the street to die, to die like a dog'," that "but for the crime, [the victim] 'was probably going to be a brilliant artist'," and that the jury should " 'imagine what a shock it was to [the victim's] wife, who's eight months pregnant'," *id.;* (3) suggestion to the jury that the defendant, not the State, bore the burden of proof; and (4) description, in closing argument, of "the defendant's testimony as 'continued lies on top of lies, on top of lies'," *id.*

As Judge Nebeker articulates, such conduct by a prosecutor undermines the public's confidence in the criminal justice system. Yet, as Judge Ruiz correctly points out, the law of this jurisdiction gives great deference to the sanction imposed by the original disciplining jurisdiction. Because of that deference, firmly imbedded in our disciplinary system, *see, e.g., In re Childress,* 811 A.2d 805, 807 (D.C.2002) (noting that "imposition of identical discipline

should be close to automatic" (internal quotation marks omitted)), I feel compelled to join the opinion. Nonetheless, while that rule may be a sound one in the majority of cases, we need to take care not to follow it automatically in cases in which doing so could result in substantially undermining the public's confidence in the criminal justice system.

NEBEKER, Senior Judge, dissenting:

As a public prosecutor, this man fraudulently and contemptuously violated his constitutional duty by failing to disclose *Brady* material he well knew he possessed and by lying to a trial judge in open court about it. In considering the appropriate discipline for such conduct, we must take into account the need to ensure and enhance public confidence in the prosecution of criminal offenses. In my view, this three-year suspension does not go far enough in that regard. I would, therefore, refer this matter back to our disciplinary authorities for proceedings leading to possible disbarment. *See, e.g., In re Demos,* 875 A.2d 636 (D.C.2005).