In re Stephen J. WILLIAMS, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 422088).**

**No. 06–BG–682.**

District of Columbia Court of Appeals.

Argued Feb. 17, 2010.

Decided Sept. 9, 2010.

---

**6.** *See* D.C.Code § 7–2502.03(a)(1).

**7.** *See id.* § 7–2502.03(a)(2)–(4) (2001).

**9.** *See Thomas,* 914 A.2d at 8, 21–22.

Stephen J. Williams, pro se.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for Office of Bar Counsel.

Before WASHINGTON, Chief Judge, and KRAMER and FISHER, Associate Judges.

KRAMER, Associate Judge:

This matter comes before this court as a result of discipline imposed upon Stephen J. Williams by the Connecticut Superior Court. The Board on Professional Responsibility ("Board") recommends that we impose the non-identical reciprocal discipline of a six-month suspension with a fitness requirement. We agree with its recommendation of a six-month suspension but we conclude that Mr. Williams's conduct warrants the imposition of a requirement that he complete an ethics and practice course before he is reinstated, rather than that he make the full reinstatement showing.

## I. Factual Background

Williams was admitted to the Bar of the District of Columbia Court of Appeals on January 3, 1990, on motion. At the time, he had also been admitted to practice law in Connecticut and New York. In 2006, Williams was suspended from the practice of law in Connecticut for six months for violations of the Connecticut Rules of Professional Conduct ("Connecticut Rules") in connection with his *pro se* representation in a traffic matter.[1] The Connecticut court concluded that Williams's conduct "constitute[d] a danger to the administration of justice and to the citizens of Connecticut who might unwittingly engage his ponderous services." Finding clear and convincing evidence that Williams violated Connecticut Rules 1.1, 3.5(3), 4.4, and 8.4(4),[2] the court suspended Williams's license to

---

1. In April 2004, Williams was pulled over for speeding and fined $148. Instead of paying the fine, Williams contested the traffic infraction. He instructed the authorities to mail all correspondence to a post office box in Hong Kong. He subsequently closed this post office box, however, and thus did not receive the notice of his assigned court date. The Connecticut court suspended Williams's driving privileges after he failed to appear. On February 23, 2005, Williams was again stopped by police in Connecticut and issued a summons for driving with a suspended license. Rather than following the procedures to reinstate his license, Williams began a course of litigious conduct which "parlay[ed] a simple motor vehicle hearing into a monumental, unnecessary, time-consuming, labor-intensive and ineffectual attack on the Deputy Clerk of the court, the Central Infraction Bureau and the Commissioner of Motor Vehicles."

2. The pertinent Connecticut Rules provide, in relevant part:

 1.1—Competence: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
 3.5—Impartiality and Decorum: A lawyer shall not.... (3) Engage in conduct intended to disrupt a Tribunal.

practice law for six months on July 18, 2005, and conditioned his reinstatement upon completion of an approved "course of instruction on legal ethics and Connecticut Practice and Procedure." Williams has failed to comply with these conditions and remains suspended in Connecticut.

New York subsequently imposed a six-month suspension as reciprocal discipline. District of Columbia Bar Counsel filed a certified copy of the Decision and Order of the Connecticut Court with this court on June 12, 2006, and a copy of the New York court's order on September 11, 2006.[3] On March 6, 2007, we suspended Williams on an interim basis pursuant to D.C. Bar R. XI, § 11(d) (1991),[4] and directed the Board to either (1) recommend whether identical, greater or lesser discipline should be imposed as reciprocal discipline, or (2) determine whether the Board should proceed *de novo*.

In response, Williams filed several motions with the Board, including a motion to dismiss for lack of personal and subject matter jurisdiction, a motion to strike parts of Bar Counsel's brief, and a motion to compel discovery. The Board denied all of Williams's motions in a May 8, 2007,

order. Williams moved to vacate this order, but the Board denied the motion and prohibited Williams from filing additional motions without prior leave from the Board, citing Williams's history of "filing repetitive motions." Williams also petitioned this court for an en banc rehearing of his interim suspension. We denied that petition on July 12, 2009.[5]

## II. Standard of Review

■ D.C. Bar R. XI, § 11(f)(2) embodies a rebuttable presumption in favor of the imposition of identical reciprocal discipline unless the respondent demonstrates, or the court finds on the face of the record by clear and convincing evidence, that one or more of the five exceptions set forth in D.C. Bar R. XI, § 11(c) applies. "A determination that one or more of the exceptions ... applies is a question of law or ultimate fact. Accordingly, the court's review is *de novo*."[6] If none of the exceptions apply, "a final determination by a disciplining court outside the District of Columbia ... that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court."

4.4—Respect for Rights of Third Persons: In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
8.4—Misconduct: It is professional misconduct for a lawyer to:.... (4) Engage in conduct that is prejudicial to the administration of justice....

3. Williams maintains that he notified Bar Counsel of his Connecticut discipline on September 17, 2005, but Bar Counsel has no record of such notice.

4. D.C. Bar R. XI, § 11(d) (1991), in relevant part, provides:

Upon receipt of a certified copy of an order demonstrating that an attorney subject to

the disciplinary jurisdiction of this Court has been suspended or disbarred by a disciplining court outside the District of Columbia or by another court in the District of Columbia, the Court shall forthwith enter an order suspending the attorney from the practice of law in the District of Columbia pending final disposition of any reciprocal disciplinary proceeding, and directing the attorney to show cause within thirty days from the date of the order why the identical discipline should not be imposed.

5. While pursuing these motions in the District of Columbia, Williams also filed similar motions in New York, appeals in Connecticut, and sought review by the United States Supreme Court on more than one occasion.

6. *In re Gallagher*, 886 A.2d 64, 68 (D.C.2005) (quoting D.C. Bar R. XI, § 11(c)).

## III. Legal Analysis

■ As a threshold matter, we must respond to Williams's challenge that we lack subject matter jurisdiction to impose reciprocal discipline. The District of Columbia Home Rule Act vests our court with the authority to impose reciprocal discipline on attorneys.[7] Section 431 of the Act provides that the District of Columbia Court of Appeals has jurisdiction over "any other matters granted to the District of Columbia courts by other provisions of law."[8] D.C.Code § 11–2502[9] is the "other provision of law" which, together with the legal principle of collateral estoppel, establishes that the disciplinary power vested in our court includes the power to impose reciprocal discipline in addition to original discipline.[10]

Williams next contends that two of the exceptions to the imposition of reciprocal discipline enumerated by D.C. Bar R. XI, § 11(c), specifically a denial of due process and an infirmity of proof, have been established by clear and convincing evidence.[11] He further argues that he was denied the assistance of counsel in Connecticut, that his privilege against self-incrimination was infringed, and that the proceedings against him were unfair and biased. In address-ing Williams's arguments, D.C. Bar R. XI, § 9(h) requires us to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record...."

### A. Exceptions to Reciprocal Discipline Pursuant to D.C. Bar R. XI, § 11(c)

#### 1. Due Process

■ D.C. Bar R. XI, § 11(c)(1) provides that reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that "[t]he procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process...." Williams alleges that the Connecticut proceedings denied him due process because he was not provided proper notice and he was denied his right to confront witnesses and use the compulsory process.[12] We disagree. The Board found Williams had proper notice because he "participated extensively in the Connecticut disciplinary process, filed numerous motions, many of which are analogous to the motions he filed before our Court in the District of Columbia," and was "granted continuances . . . and repeatedly urged to seek the advice of counsel." The Connecticut court

---

7. D.C.Code § 1–201.01.

8. D.C.Code § 1–204.31(a).

9. D.C.Code § 11–2502 provides:

 The District of Columbia Court of Appeals may censure, suspend from practice, or expel a member of its bar for crime, misdemeanor, fraud, deceit, malpractice, professional misconduct, or conduct prejudicial to the administration of justice. A fraudulent act or misrepresentation by an applicant in connection with this application or admission is sufficient cause for the revocation by the court of such person's admission.

10. See In re Benjamin, 698 A.2d 434, 440 (D.C.1997) ("Under principles of collateral es-toppel, in reciprocal discipline cases we generally accept the ruling of the original jurisdiction...."); In re Meaden, 902 A.2d 802, 810–11 (D.C.2006) ("Relitigation of the issues in this jurisdiction would be inconsistent with principles of collateral estoppel."). See also In re Velasquez, 507 A.2d 145, 147 (D.C.1986) ("[T]here is merit in the idea of granting due deference—for its sake alone—to the opinions and actions of a sister jurisdiction with respect to attorneys over whom we share supervisory authority.").

11. See D.C. Bar R. XI, § 11(f)(2).

12. Bar Counsel interprets Williams's right to confrontation and compulsory process argument as part of "the opportunity to be heard." We conduct our analysis accordingly.

also cited the disciplinary rules Williams allegedly violated, providing Williams fair notice of the charges against him, and the possible sanctions attached thereto.[13] Thus, Williams has failed to provide any evidence, much less clear and convincing evidence, that he lacked proper notice.

Substantial evidence also supports the Board's findings on the issue of Williams's right to confront witnesses and to compulsory process.[14] The record shows that Williams subpoenaed three witnesses to appear at his 2005 Connecticut disciplinary hearing: the Assistant State's Attorney, the Deputy Chief Clerk of the Superior Court, and the presiding Superior Court Judge. All three were present in the courtroom during his hearing. Williams, however, failed to make an adequate proffer as to the testimony he planned to elicit from them. Thus, the Board correctly concluded that Williams had an "opportunity to confront his accusers and to elicit their testimony," but failed to do so.

### 2. *Infirmity of Proof*

 D.C. Bar R. XI, § 11(c)(2) provides that reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that "there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject . . . ." As noted by the Board, the Connecticut Court found "clear and convincing evidence" that Williams engaged in the

charged misconduct. We decline to engage in a *de novo* review, for to do so would be inconsistent with the principles of collateral estoppel.[15] "[O]ur responsibility in reciprocal matters is not to sit in appellate review of the foreign disciplinary proceedings, in order to determine whether they conformed in every respect to local procedural and substantive law."[16] The burden is on the respondent to establish an infirmity of proof, which Williams has failed to sustain.

### 3. *Other Claims*

 As Bar Counsel points out, Williams's remaining objections to the imposition of reciprocal discipline are not encompassed by any of the exceptions recognized by D.C. Bar R. XI, § 11(c). Even if Williams's claims could be construed as an argument that "imposition of the same discipline by the Court would result in grave injustice,"[17] the Board properly found Williams's remaining claims to be meritless. Williams contends that he was denied the right to counsel, but the record clearly shows that the Connecticut court provided Williams multiple opportunities to retain counsel, and even explicitly encouraged Williams to do so. Williams also asserts that his Fifth Amendment privilege against self-incrimination was infringed when he was placed under oath in his disciplinary hearing. But the Fifth Amendment privilege against self-incrimination was inapplicable because Williams was not asked to testify to anything which could lead to criminal prosecution.[18] Fi-

---

13. *See, e.g., In re Edelstein,* 892 A.2d 1153, 1158 (D.C.2006); *In re Bielec,* 755 A.2d 1018, 1024 (D.C.2000) (per curiam) (holding that fair notice is satisfied by "any evidence in the record which describes the specific charges or the ethical violations that form the basis for [the discipline]").

14. *See* D.C. Bar Rule XI, § 9(h).

15. *In re Meaden, supra* note 10, 902 A.2d at 810–11.

16. *In re Morrissey,* 648 A.2d 185, 190 (D.C. 1994).

17. D.C. Bar R. XI, § 11(c)(3).

18. *See In re Artis,* 883 A.2d 85, 103 (D.C. 2005) ("The Fifth Amendment protects

nally, Williams argues that the Connecticut court was corrupt and that the proceedings against him were unfair. He does not, however, provide any evidence to support these accusations. Thus, the Board properly dismissed this argument.

### B. Interim Suspension

■ Williams makes an additional due process argument with regards to his interim suspension pursuant to D.C. Bar R. XI, 11(d).[19] He contends that "the order of suspension was entered without notice or hearing and without opportunity to the accused to explain the transaction and, if he could, to vindicate his conduct." This issue is not properly before us because this court has already made its final ruling on the issue of Williams's interim suspension and that decision is *res judicata*.[20] In any event, it is clear that Williams had proper notice and an opportunity to be heard.[21]

### C. Fitness Requirement

■ Bar Counsel urges us to adopt the Board's determination that a fitness requirement should be imposed, which the Board concedes would constitute substantially different discipline pursuant to the exception to the imposition of identical reciprocal discipline in D.C. Bar R. XI, § 11(c)(4).[22] Because Bar Counsel seeks substantially different discipline, it bears the burden of proving that there is "clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law."[23] This Bar Counsel failed to do. Bar Counsel relied upon the Connecticut court's conclusion that Williams was "not fit to practice before the courts," but also conceded at oral argument that these words are not dispositive. Because Williams's reinstatement in Connecticut is not conditioned upon a showing of fitness and the Connecticut court did not utter these words as a conclusion of law, we conclude that these words do not carry the significance which Bar Counsel asserts. Thus, we decline to adopt the Connecticut court's statement as a dispositive conclusion of law.

In the alternative, Bar Counsel suggests that we should require Williams to make a full fitness showing based upon his "mis-

against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.") (internal quotation marks and citation omitted); *In re Thorup*, 461 A.2d 1018, 1019 (D.C.1983) (per curiam); *In re Burton*, 472 A.2d 831, 846 (D.C.1984).

19. *Supra*, note 4.

20. *In re T. Carlton Richardson*, 759 A.2d 649, 654 (D.C.2000).

21. Williams was put on notice when Bar Counsel filed its notice of foreign discipline and proposed order for interim suspension on June 12, 2006. He was provided thirty days to show cause why identical discipline should not be imposed. Indeed, Williams responded with an opposition on July 10, 2006. He subsequently filed a motion to stay the proceedings and a petition for rehearing en banc in this court, which were both denied, and a petition for a writ of certiorari and a petition for rehearing with the Supreme Court, which were also denied. Williams thus successfully delayed the imposition of his interim suspension for nine months.

22. *See generally In re Ditton*, 954 A.2d 986, 992 (D.C.2008). *See also In re DeMaio*, 893 A.2d 583, 587 (D.C.2006) ("To decide whether it is appropriate to apply the substantially different discipline exception, we must undertake a two-step inquiry: First, we determine if the misconduct in question would have resulted in the same punishment here as it did in the disciplining jurisdiction.... Second, where the discipline imposed in this jurisdiction would be different from that of the disciplining court, we must then determine whether the difference is substantial.") (internal quotation marks and citation omitted).

23. *In re Cater*, 887 A.2d 1, 6 (D.C.2005) (original discipline case where we clarified the legal standard for imposing a fitness requirement).

conduct that served to 'obfuscate, inflame and attenuate a simple legal proceeding.' " This blanket statement, however, fails to provide the necessary "clear and convincing evidence"[24] for requiring such a showing.

Instead, having concluded that some measure is nevertheless desirable to provide the public with sufficient protection against respondent's potential future misconduct, we hold that Williams's reinstatement shall be subject to the identical requirement imposed by Connecticut— namely that he complete an approved legal ethics course.[25]

### IV. Conclusion

Williams fails to demonstrate that any of the exceptions to identical discipline apply in his case. D.C. Bar Rule XI, § 9(h) instructs us to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." We agree with the Board's findings and recommended disposition, with the exception of its recommendation to require Williams to demonstrate fitness before reinstatement. We therefore suspend Williams from the practice of law in the District of Columbia for six months, which will be deemed to run from March 15, 2007, the date he filed an affidavit in compliance with D.C. Bar R. XI § 14(g). In addition, Williams must comply with the same requirement imposed by Connecticut, namely the completion of an approved legal ethics course, before he may be reinstated.

*So ordered.*

---

24. *Id.*

25. See, *supra,* Part I. Williams may complete the required course in either jurisdiction.