**In re Frederick W. SALO,**

**A Suspended Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 446236).**

**No. 11–BG–1433.**

District of Columbia Court of Appeals.

Argued May 10, 2012.
Decided July 18, 2012.

Pamela A. Bresnahan, with whom Elizabeth Treubert Simon, Washington, was on the brief, for respondent.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar

Counsel, was on the brief, for the Office of Bar Counsel.

Before BECKWITH and EASTERLY, Associate Judges, and NEBEKER, Senior Judge.

BECKWITH, Associate Judge:

On July 27, 2010, the New York Supreme Court, Appellate Division, First Judicial Department ("the New York court") found respondent Frederick W. Salo guilty of nonvenal misappropriation of funds and related offenses and suspended him from the practice of law in New York for one year, effective August 26, 2010. *Matter of Salo*, 77 A.D.3d 30, 39, 906 N.Y.S.2d 16 (N.Y.App.Div.2010). The District of Columbia Office of Bar Counsel now recommends that we impose reciprocal discipline and likewise suspend Mr. Salo for one year with a fitness requirement.[1] Mr. Salo argues that the presumption of reciprocal discipline should not apply because the District of Columbia would have imposed a substantially different sanction had this matter originated in our jurisdiction. For the reasons articulated below, we find that Mr. Salo has rebutted the presumption of reciprocal discipline and we impose a six-month suspension with no fitness requirement.

## I. Background

Mr. Salo's misconduct involved the mismanagement of settlement funds following a personal injury action on behalf of a client. The New York court determined that after receiving a $198,000 settlement payment into his Interest on Lawyer Account ("IOLA account") in December 2001, Mr. Salo made payments to the client and himself while retaining $40,000 pending resolution of a worker's compensation lien. *Salo*, 77 A.D.3d. at 31, 906 N.Y.S.2d 16. That lien was not resolved until June 2005. *Id.* In the interim, Mr. Salo allowed the balance of his IOLA account to fall as low as $102.88, well below the amount of the lien. *Id.* The court also concluded that Mr. Salo impermissibly commingled funds when he transferred $32,000 from his IOLA account to his personal account in January 2004 and transferred the same amount back to his IOLA account in April 2005—funds ultimately used to resolve the lien. *Id.* at 32–33, 906 N.Y.S.2d 16.

Mr. Salo did not dispute the underlying factual allegations. *Id.* at 32–33, 906 N.Y.S.2d 16. He conceded that he had failed to designate the checks as originating from an IOLA account, that he impermissibly made an IOLA check payable to cash, and that this behavior "adversely reflect[ed] on his fitness as a lawyer." *Id.* at 33, 906 N.Y.S.2d 16. He further acknowledged that he mishandled his IOLA account due to a mistaken belief that he was authorized to keep a cushion of earned legal fees in the account, a practice he no longer follows. *Id.* at 32, 906 N.Y.S.2d 16. Mr. Salo contended, however, that post-traumatic stress disorder ("PTSD") and depression, stemming from childhood abuse and from his proximity to the September 11, 2001, attacks on the World Trade Center in New York, precluded him from acting with venal intent as to the misappropriation. *Id.* at 32–33, 906 N.Y.S.2d 16. At a hearing before a referee in New York on March 28, 2007, Mr. Salo presented substantial medical evidence of his diagnoses and the impact

---

1. The New York court suspended Mr. Salo "until further order of the court," *Salo*, 77 A.D.3d at 39, 906 N.Y.S.2d 16, which this court has held to be "functionally equivalent" to a fitness requirement. *In re D'Onofrio*, 764 A.2d 797, 798 n. 1 (D.C.2001); *see also In re Stuart*, 942 A.2d 1118, 1120 (D.C.2008) (citing N.Y. Comp.Codes R. & Regs. tit. 22, § 691.11 (2007)).

PTSD and depression had had on his ability to practice law. *Id.*

On review of the referee's findings, the New York court sustained the charges of misappropriation, commingling, improper designation of trust account, improper cash withdrawal, and conduct reflecting adversely on fitness, but held that there was insufficient evidence of venal intent to support a charge for intentional conversion of third-party funds. *Salo,* 77 A.D.3d at 38, 906 N.Y.S.2d 16. That charge, which alleged that Mr. Salo's invasion of funds subject to the lien involved "dishonesty, fraud, deceit or misrepresentation," could not, in the court's view, "be resolved so simply," as an intentional conversion required a showing of *intent* to defraud, deceive, or misrepresent, and the court was unable to conclude that Mr. Salo possessed such an intent. *Id.* at 37–38, 906 N.Y.S.2d 16. The court reasoned that

> [n]otwithstanding the Referee's careful analysis of the evidence, to which the majority of the Hearing Panel deferred, it cannot be ignored that the mental health experts for both sides were in agreement that respondent invaded the [ ] lien funds inadvertently, without specifically intending to misappropriate third-party funds, as the direct result of the PTSD from which he suffered at the time. Again, it was the view of both experts that respondent, by reason of his PTSD (which caused him to stop opening mail, including bank statements), lost track of the fact that the balance remaining in his IOLA account was subject to the [ ] lien on the proceeds of the [ ] settlement, and believed that he was drawing on the "cushion" of

earned legal fees it was his practice to keep in the account.

*Id.* at 38, 906 N.Y.S.2d 16.

Given this "uncontroverted expert evidence," the court concluded that "it has not been proven by a preponderance of the evidence that respondent had the venal intent required for a finding that he willfully and knowingly converted third-party funds." *Id.* The court further stated that in reaching that conclusion, it viewed as significant "that respondent had no evident motive to convert third-party funds (since it is uncontroverted that he had sufficient funds of his own to meet his personal expenses); that no other instances of conversion, either before or since, have been alleged; and that neither the client nor the lien-holder was harmed by respondent's conduct." *Id.*

In imposing sanction, the court recognized that "there are cases in which suspension from the practice of law for a substantial period of time is the appropriate sanction for even nonvenal misappropriation of funds." *Id.* at 38–39, 906 N.Y.S.2d 16 (citing cases of nonvenal conversion with one- or two-year suspensions). The court rejected the Departmental Disciplinary Committee's recommendation of disbarment or at least a three-year suspension, however, and determined that a one-year suspension was the appropriate sanction in Mr. Salo's case. *Id.* at 17, 39, 906 N.Y.S.2d 16. Mr. Salo's suspension took effect on August 26, 2010. He was reinstated to the New York State bar on February 7, 2012, without opposition.

Mr. Salo notified the Bar of the District of Columbia of his New York discipline on September 16, 2011.[2] In an order dated

---

2. In 2000, Mr. Salo elected to become an inactive member of the D.C. Bar, erroneously believing this would no longer require him to pay bar dues. Though he was put on administrative suspension for nonpayment of dues in 2001, Mr. Salo asserts that he did not become aware of this administrative suspension until late 2011, when he asked the lawyer-rating website, Avvo.com, to update his New York bar status and the website also for

December 20, 2011, this court suspended him from the practice of law in the District of Columbia pending final disposition. Mr. Salo filed affidavits pursuant to D.C. Bar Rule XI § 14(g), and *In re Goldberg*, 460 A.2d 982 (D.C.1983), on December 30, 2011.

## II. Analysis

■ In attorney-discipline cases arising as reciprocal matters, D.C. Bar R. XI § 11(c) sets forth a rebuttable presumption in favor of this court's imposition of discipline identical to the discipline imposed by the original disciplining jurisdiction. *In re Meisler*, 776 A.2d 1207, 1207–08 (D.C.2001). "The presumption applies unless the party opposing discipline (or urging non-identical discipline) shows, by clear and convincing evidence, that an exception should be made on the basis of one or more of the grounds set out in Rule XI, § 11(c)(1)-(5)." [3] As a "determination that one or more of the exceptions . . . applies is a question of law or ultimate fact," this court's review is de novo. *In re Williams*, 3 A.3d 1179, 1182 (D.C.2010) (citation omitted).

In this case, Bar Counsel urges us to impose a reciprocal discipline of one year with reinstatement conditioned on a showing of fitness because there is no clear and convincing evidence indicating that any exception to the presumption of reciprocal discipline is warranted. Mr. Salo opposes the imposition of reciprocal discipline based upon Rule XI's fourth exception, which provides that "[t]he misconduct established warrants substantially different discipline in the District of Columbia[.]" D.C. Bar R. XI § 11(c)(4).

■ Analysis of the substantially different discipline exception requires a two-step inquiry. *In re Jacoby*, 945 A.2d 1193, 1199–200 (D.C.2008); *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990). First, we determine whether the conduct in question would not have resulted in the same punishment in the District of Columbia as it did in the disciplining jurisdiction. *In re Fitzgerald*, 982 A.2d 743, 748 (D.C.2009) (citations and quotations omitted). Second, if the discipline imposed here would be different from that of the disciplining court, we must decide whether the difference between the two is substantial. *Id.*

At the outset, we must define the conduct in question in order to determine what punishment it would carry in the District of Columbia. Bar Counsel reads the New York court's opinion to state that Mr. Salo was guilty of intentional misappropriation of entrusted funds, mitigated by his mental health issues. That is, in the view of Bar Counsel, New York's conclusion that Mr. Salo's misappropriation was caused by his disability mimics this court's application of mitigation under *In*

---

the first time listed him as suspended in the District of Columbia.

3. Specifically, Rule XI § 11(c) establishes the standard for reciprocal discipline and provides as follows:

Reciprocal discipline shall be imposed unless the attorney demonstrates to the Court, by clear and convincing evidence, that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C.Bar. R. XI § 11(c).

*re Kersey,* 520 A.2d 321 (D.C.1987), and its progeny, in which this court recognized that certain disabilities that may have contributed to ethical misconduct could mitigate the sanction for that conduct. *Id.* at 326 ("Today we hold that alcoholism is a mitigating factor to be considered in determining discipline"); *see also In re Peek,* 565 A.2d 627, 631, 633 (D.C.1989) (recognizing that chronic depression could be a mitigating factor where there was a causal connection between the depression and the misconduct). Had this conduct originated in the District of Columbia, Bar Counsel argues, this court would have deemed it reckless or intentional misappropriation warranting automatic disbarment, but then applied mitigation to stay the disbarment and order treatment for Mr. Salo's disability.

■ Mr. Salo contends, conversely, that the New York court's conclusions align with our negligent misappropriation cases, as he was unable to intentionally misappropriate funds due to his mental illness. Thus in Mr. Salo's view, the discipline typically imposed in the District of Columbia for negligent misappropriation—a six-month suspension with no fitness requirement—is the appropriate sanction to impose in this case.

■ We read the court's conclusions as akin to a determination in this jurisdiction that Mr. Salo negligently misappropriated funds. We have said that "the central issue in determining whether a misappropriation is reckless is *how* the attorney handles entrusted funds, whether in a way that suggests the unauthorized use was inadvertent or the result of simple negligence, or in a way that reveals either an intent to treat the funds as the attorney's own or a conscious indifference to the consequences of his behavior for the security of the funds." *In re Anderson,* 778 A.2d 330, 339 (D.C.2001) (citing *In re Micheel,* 610 A.2d 231, 236 (D.C.1992); Black's Law Dictionary 1277 (7th ed.1999) (recklessness is a "state of mind in which a person does not care about the consequences of his or her action"); 57 Am.Jur.2d Negligence § 302 (1989) ("[R]eckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts that would disclose this danger to any reasonable person.")). The New York court referred repeatedly and in concrete terms to Mr. Salo's lack of intent, and specifically concluded that the Departmental Disciplinary Committee had not proven by a preponderance of the evidence[4] that Mr. Salo "had the venal intent required for a finding that he willfully and knowingly converted third-party funds." *Salo,* 77 A.D.3d at 38, 906 N.Y.S.2d 16. If the court of original jurisdiction concluded that Mr. Salo did not intend to misappropriate funds, we are not inclined to impute that intent at this stage of review. We therefore equate Mr. Salo's conduct with negligent misappropriation under our standards.

■ Negligent misappropriation would not likely have resulted in the same pun-

---

4. In the District of Columbia, all disciplinary charges brought by Bar Counsel must be proven by clear and convincing evidence. *In re Benjamin,* 698 A.2d 434, 439 (D.C.1997) (citing Board on Professional Responsibility Rule 11.4); *In re Zakroff,* 934 A.2d 409, 422 (D.C.2007) (noting that New York applies a "fair preponderance of the evidence" standard while the District of Columbia requires proof of attorney misconduct by clear and convincing evidence.) And while we recognize that "difference in evidentiary standards between New York and the District of Columbia in disciplinary cases does not, on its face, establish an infirmity of proof," *Benjamin,* 698 A.2d at 439, it is worth noting that the New York court found insufficient evidence of intent using a less stringent standard than the clear-and-convincing standard that we employ.

ishment in the District of Columbia as Mr. Salo's one-year suspension in New York. "[T]he usual sanction for negligent misappropriation" in the District of Columbia, "even with related violations, is a six-month suspension." *In re Greenwald,* 926 A.2d 169, 171 (D.C.2007), *In re Edwards,* 870 A.2d 90, 94 (D.C.2005); *In re Anderson,* 778 A.2d at 342. The difference is magnified by the fact that Mr. Salo's reinstatement in New York was conditioned on a fitness requirement while attorneys sanctioned for negligent misappropriation in the District of Columbia do not typically face such a requirement. *Edwards,* 870 A.2d at 94.

■ Having decided that the discipline that New York imposed in this case and the discipline that would be imposed for the same misconduct in the District of Columbia are different, we must determine whether this difference is "substantial." Our case law confirms that it is. This court has concluded, for example, that "the difference between a sixty-day suspension and a six-month suspension is substantial." *Greenwald,* 926 A.2d at 171 (citing *In re Schweizer,* 762 A.2d 34 (D.C.2000)); *see also In re Maignan,* 942 A.2d 1115, 1117 (D.C.2007) ("A six-month suspension here is substantially different from an indefinite suspension in Maryland, which permits a respondent to apply for reinstatement immediately.") (citing *In re Berger,* 737 A.2d 1033, 1045 (D.C.1999)). If the difference between the sixty-day and six-month suspensions at issue in *Greenwald* was sub-

stantial, we are hard-pressed to characterize the difference between New York's one-year suspension with a fitness requirement and the District of Columbia's six-month suspension with no fitness requirement as any less substantial. We conclude that the substantially different exception to our reciprocal discipline rule applies in this case and that Mr. Salo has thus rebutted the presumption of reciprocal discipline.

■ As we have indicated, it is well established that negligent misappropriation usually results in a six-month suspension without a fitness requirement. *See, e.g., Edwards,* 870 A.2d at 94 (stating that a "six-month suspension without a fitness requirement is the norm for attorneys who have committed negligent misappropriation of entrusted funds together with the related violations (commingling, deficient record keeping)"). We do not require proof of fitness as a condition of reinstatement after suspension unless "the record in the disciplinary proceeding [contains] clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *In re De Maio,* 893 A.2d 583, 589 (D.C.2006) (quoting *In re Cater,* 887 A.2d 1, 6 (D.C.2005)). Here, we discern no such evidence causing us to question Mr. Salo's ability to practice law, and no reason to deviate from the sanction generally imposed for conduct that is most comparable to the New York court's understanding of Mr. Salo's conduct in this case.[5]

---

**5.** Our court has noted that New York's reinstatement procedure requires a showing that is analogous to the District of Columbia's fitness requirement. *See, e.g., In re Stuart,* 942 A.2d 1118, 1120 (D.C.2008); *In re D'Onofrio,* 764 A.2d 797, 798 n. 1 (D.C.2001) (per curiam). We have also stated, however, that "reinstatement in the original disciplining jurisdiction ... does not warrant automatic reinstatement in the District of Columbia or

rebut the presumption that proof of fitness will be required here as a component of identical reciprocal discipline." *In re Gonzalez,* 967 A.2d 658, 660–661 (D.C.2009). In this case, Bar Counsel contends that Mr. Salo's reinstatement in New York should not influence the decision whether to condition Mr. Salo's reinstatement upon a showing of fitness. Yet "[w]hile the decision to suspend an attorney for misconduct turns largely on the

Accordingly, for the foregoing reasons, it is ORDERED that Frederick W. Salo is hereby suspended from the practice of law in the District of Columbia for a period of six months, effective December 30, 2011, when he submitted proof of his compliance with D.C. Bar R. XI § 14(g).

determination of historical facts, the decision to impose a fitness requirement turns on a partly subjective, predictive evaluation of the attorney's character and ability." *In re Cater, supra,* 887 A.2d at 22. New York's unopposed reinstatement of Mr. Salo, coupled with the affidavit submitted by his treating psychologist stating his belief that Mr. Salo has made a full recovery and is unlikely to relapse, may thus properly inform our decision whether a fitness requirement is appropriate in this case.