**In re Michael R. CARITHERS, Jr., Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 434113).**

**No. 11–BG–1405.**

District of Columbia Court of Appeals.

Submitted April 19, 2012.

Decided Aug. 16, 2012.

Michael R. Carithers, Jr., pro se.

Wallace E. Shipp, Jr., Bar Counsel, and William R. Ross, Assistant Bar Counsel, were on the brief for Office of Bar Counsel.

Before FISHER and BECKWITH, Associate Judges, and REID, Senior Judge.

FISHER, Associate Judge:

On July 18, 2011, the Maryland Court of Appeals found that respondent Michael R. Carithers, Jr., had misappropriated fees, commingled funds, and violated several

rules of professional conduct. The court disbarred him, effective August 17, 2011, *Attorney Grievance Comm'n v. Carithers*, 421 Md. 28, 25 A.3d 181, 199 (2011), and the District of Columbia's Bar Counsel now recommends that we impose identical reciprocal discipline. Respondent argues that the presumption in favor of identical reciprocal discipline should not apply because the District of Columbia would have imposed a substantially different sanction had the matter originated in this jurisdiction. We conclude that Mr. Carithers has not rebutted the presumption and, accordingly, that he must be disbarred.

## I. Factual and Procedural Background

Respondent has been practicing law since 1991. *Carithers*, 25 A.3d at 184. In August 2005, he began work at Brown & Sheehan ("B & S"), a firm based in Baltimore, on an "of counsel" basis. *Id.* Respondent was hired as a full-time attorney with a full-time salary of approximately $90,000. *Id.* He did not have a written contract concerning his employment at B & S, nor did he have any document defining his "of counsel" status. *Id.* There was no agreement that respondent could maintain a "side practice" while he was at B & S. *Id.* at 185.

Nevertheless, respondent represented several former clients of B & S who owed outstanding legal fees to the firm. *Id.* The administrative managing partner of the firm, David Sheehan, had expressly prohibited respondent from representing these clients because of their outstanding fees. *Id.* at 184, 186. Respondent did not inform B & S of his decision to continue to represent these clients at any time. *Id.* at 186. However, he used B & S retainer agreements, letterhead, and stationery without the permission of B & S. *Id.* at 185–87. Respondent also opened cases

"on his own without entering them into the B & S client database, while receiving payments" using B & S billing statements and resources. *Id.* at 185.

Respondent did not deposit fees earned through his side practice into a trust account. *Id.* at 185. Instead, he deposited checks from clients into his personal account. *Id.* In at least one of these cases, he deposited the fees into his account before doing any work on the client's case. *Id.* at 186, 199. In addition, respondent "did not maintain separate malpractice insurance and did not create a separate entity for his side practice." *Id.* at 185. He did not initially report any of the income from his side practice to the Internal Revenue Service (IRS), though he eventually filed amended returns. *Id.*

On June 23, 2008, after learning that respondent had maintained a side practice and had deposited checks from clients into his personal account, B & S terminated him. *Id.* at 186. On April 30, 2010, the Maryland Attorney Grievance Commission filed a petition initiating disciplinary proceedings against Mr. Carithers. *Id.* at 183. The Maryland Court of Appeals referred the matter to a judge of the Circuit Court for Baltimore County, who held an evidentiary hearing and issued findings of fact. *Id.* Pursuant to Maryland procedure, the hearing judge also made recommendations of law to the Court of Appeals. *Id.*

After considering those findings of fact and recommendations of law, the Court of Appeals disbarred respondent. *Id.* at 199. The court found that respondent had violated several Maryland Rules of Professional Conduct, including Rule 1.15(a)

(safekeeping of property and prohibition of commingling); 8.4(b) (prohibiting criminal acts that "reflect[ ] adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects"); 8.4(c) (prohibiting "conduct involving dishonesty, fraud, deceit or misrepresentation"); and 8.4(d) (prohibiting "conduct that is prejudicial to the administration of justice").[1] *Id.* at 183, 195–99. Further details are provided in the opinion of the Maryland Court of Appeals. The court specifically found that respondent had committed criminal theft "by intentionally and deceptively misappropriating fees from former B & S clients that represented B & S legal fees." *Id.* at 196, 199. The court concluded that intentional misappropriation of funds constituting "deceitful and dishonest" conduct justified disbarment under Maryland law. *Id.* at 199.

Respondent Carithers notified Bar Counsel of his Maryland disbarment on September 7, 2011. In an order dated November 17, 2011, this court suspended respondent from the practice of law in the District of Columbia pending final disposition. Respondent filed an affidavit pursuant to D.C. Bar R. XI, § 14(g) on November 22, 2011.

## II. Analysis

### A. Legal Principles and Standard of Review

 In cases of reciprocal discipline, D.C. Bar R. XI, § 11(c) establishes a rebuttable presumption in favor of imposing the same sanction that the original disciplining jurisdiction imposed. *In re Salo*, 48 A.3d 174, 177–78 (D.C.2012) (citing *In*

---

1. The Maryland court also found that Mr. Carithers had violated Rule 8.4(a), which states that it is professional misconduct for a lawyer to, among other things, "violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct." *Carithers*, 25

A.3d at 183, 198–99. The provisions of Rule 1.15(a) and Rules 8.4(a)-(d) are included in the District of Columbia Rules of Professional Conduct with the same numbering and almost identical wording.

re *Meisler*, 776 A.2d 1207, 1207–08 (D.C. 2001)). However, the court will not impose identical discipline if the respondent demonstrates or the record shows, by clear and convincing evidence, that one or more of the exceptions in Rule XI, § 11(c) applies. *In re Williams*, 3 A.3d 1179, 1182 (D.C.2010). Those exceptions are: "(1) [t]he procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (2) [t]here was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or (3) [t]he imposition of the same discipline by the Court would result in grave injustice; or (4) [t]he misconduct established warrants substantially different discipline in the District of Columbia; or (5) [t]he misconduct elsewhere does not constitute misconduct in the District of Columbia." D.C. Bar R. XI, § 11(c). Determining whether one or more of the exceptions applies "is a question of law or ultimate fact," and therefore the court's review is *de novo*. *Salo*, 48 A.3d at 178 (citing *Williams*, 3 A.3d at 1182).

Bar Counsel argues that there is no clear and convincing evidence that any of § 11(c)'s exceptions applies, and that respondent should accordingly be disbarred. Mr. Carithers invokes the fourth exception, asserting that the District of Columbia would impose "substantially different discipline." D.C. Bar R. XI, § 11(c)(4).

▆ Analysis of the "substantially different discipline" exception to reciprocal discipline requires "a two-step inquiry." *In re Jacoby*, 945 A.2d 1193, 1199 (D.C. 2008). First, we must determine whether the misconduct would not have resulted in the same sanction in this jurisdiction as it did in the disciplining jurisdiction. *Id.* at 1199–1200. Second, if the sanction here would be different, we must determine if the difference is substantial. *Id.* at 1200.

## B. Applying Legal Principles to This Case

### 1. The Nature of the Misconduct

▆ In analyzing whether the misconduct would have resulted in the same or a different sanction in this jurisdiction, we must first determine the nature of respondent's misconduct. Mr. Carithers seems to dispute some of the factual findings that were made in Maryland. He argues that he disclosed the clients in his side practice to B & S, that he did not misrepresent any fact or submit any false documentation to a client, and that he did not collect any fees before they were earned. However, the Maryland Court of Appeals specifically concluded that respondent "did not disclose ... to anyone at B & S that he was retaining clients on his own, outside of the firm, or that he was regularly depositing client fees into his personal account" while he was a full-time employee at the firm. *Carithers*, 25 A.3d at 186. It further found that respondent "intentionally deceived his side practice clients by using B & S letterhead, station[e]ry, retainer agreements and billing statements, and thereby purported to represent these clients as an attorney of B & S." *Id.* at 189. Finally, the court found that respondent deposited client fees into his personal account before earning those fees. *Id.* at 186, 199. The Maryland Court of Appeals therefore adopted findings of fact from the hearing judge that are contrary to respondent's assertions, and Mr. Carithers may not relitigate those facts in this court. *See In re Zdravkovich*, 831 A.2d 964, 969 (D.C. 2003) (noting that the respondent in a reciprocal discipline case was "not entitled to relitigate or collaterally attack the find-

ings or judgment of the Maryland Court of Appeals.").[2]

The findings of the Maryland court show that respondent committed misconduct by engaging in deceit and dishonesty. Respondent deceived his side practice clients by using B & S stationery, letterhead, retainer agreements, and billing statements, thereby implying that he was representing them in his capacity as a B & S attorney. *Carithers*, 25 A.3d at 189. In addition, in at least one case, respondent deposited client fees into his personal account before he had done any work to earn those fees. *Id.* at 186, 199.

Respondent also engaged in deceitful and dishonest conduct towards his employer. Despite having no authorization from B & S to do so, Mr. Carithers maintained a side practice while at the firm. *Id.* at 185. Moreover, he maintained this side practice with clients who owed outstanding legal fees to his employer, and his employer had explicitly prohibited him from further representing those clients because of their outstanding legal fees. *Id.* at 186. Respondent admitted that he knew there would be a problem if he informed his employers that he was continuing to represent those clients, and he did not inform the managing partners of B & S of his side practice at any time. *Id.* at 186–87. He also opened several new cases without entering them into the B & S client database and used B & S letterhead, stationery, retainer agreements, and billing statements without the permission of B & S. *Id.* at 185, 187, 189. Finally, respondent improperly deposited fees from his side practice into his personal account rather than a trust account. *Id.* at 185.

Respondent's entire course of conduct therefore includes deceit, dishonesty, misappropriation, and commingling of funds. The Maryland Court of Appeals noted mitigating factors, including that respondent cooperated with Maryland bar investigatory authorities, had no disciplinary history, and agreed to reimburse B & S for the fees that he received from clients who owed fees to B & S. *Id.* at 189. However, the court also noted that Mr. Carithers "intentionally deceived" clients and his employer and that he had been practicing law since 1991 and therefore had "substantial experience in the practice of law." *Id.* at 189–90.

## 2. The Appropriate Sanction

Respondent acknowledges that the Maryland court found a "misappropriation of client funds," *see Carithers*, 25 A.3d at 198, but emphasizes that it made no finding that those funds were misappropriated from a client or that respondent injured or potentially injured any clients. [Respondent's Sanctions Brief at 8] He also acknowledges that he failed to open a trust account. However, he argues that this was "a fee dispute between a law firm and its 'of counsel' attorney" [Respondent's Sanctions Brief at 1] and compares his misconduct to that in *In re Kennedy*, 542 A.2d 1225 (D.C.1988), where this court imposed a ninety-day suspension. Therefore, respondent argues, the District of Columbia would impose substantially different discipline than disbarment.

The present case is readily distinguishable from *Kennedy*, where a lawyer failed to remit to his firm a retainer fee from a

---

**2.** If respondent were arguing that the exceptions to identical reciprocal discipline concerning lack of due process, infirmity of proof, or lack of misconduct under the District of Columbia's rules (exceptions 1, 2, and 5, respectively) applied to this case, a factual analysis might be required, *see* D.C. Bar R. XI, § 11(c), but respondent has not explicitly made such an argument. Even if such an argument is implied, he has not established, and the record does not show, that any of these exceptions applies to this case.

firm client, told another client to send payment to his new office after he had left the firm, and misrepresented his salary to a loan office of a savings and loan institution. *Kennedy,* 542 A.2d at 1226. (The court noted that the lawyer later abandoned his pursuit of the loan. *Id.* at 1227.) This court found that the lawyer's actions were "dishonest" but that the violations "were essentially unrelated to the practice of law" and were "committed outside of the representation of a client." *Id.* at 1229–30. We note that *Kennedy* was decided before *In re Addams,* in which this court held that "in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc).

Respondent argues that there was no agreement or understanding that prohibited him from maintaining a side practice and that he had done so during his employment at other firms where he likewise held an "of counsel" position. However, B & S specifically prohibited him from representing the clients in question after they failed to pay the firm's fees, and respondent admitted that he knew there would be a problem if he informed the firm's partners that he was representing those clients as part of a side practice. *Id.* at 186–87. He therefore was dishonest with his employer.

This case also differs from *Kennedy* in that, as we have previously explained, respondent was dishonest with clients as well as his employer. He conducted business with clients using B & S letterhead, stationery, retainer agreements, and billing statements, thereby implying that he was representing them as a B & S attorney while in actuality representing them in his side practice. *Carithers,* 25 A.3d at 189. Further, he deposited client fees into his personal account, for his personal use, before he had earned those fees. *Id.* at 186, 199.

■ In cases of reciprocal discipline, the presumption is that we will impose the same sanction imposed in the original disciplining jurisdiction, and the burden is on respondent to rebut this presumption by clear and convincing evidence. *Williams,* 3 A.3d at 1182. In this case, respondent has not met this burden. He has engaged in deceitful and dishonest conduct, misappropriated funds by accepting client fees for himself despite knowing that those clients still owed fees to his firm, and commingled funds from clients with funds in his personal account. Indeed, the Maryland Court of Appeals even found that respondent engaged in criminal theft by depriving his law firm of client fees and using B & S time and resources for his personal gain in his side practice. *Carithers,* 25 A.3d at 196.

It appears that respondent did not misappropriate any funds that were owed to his clients. Nevertheless, this entire course of conduct falls within the range of misconduct that would be met by disbarment in this jurisdiction. *See In re Slattery,* 767 A.2d 203, 205–06, 212–13, 219 (D.C.2001) (ordering disbarment where an administrative law judge was found to have committed theft by appropriating funds from a fraternal organization in his capacity as chapter president without authorization and to have lied to conceal the appropriation); *In re Appler,* 669 A.2d 731, 734, 741 (D.C.1995) (ordering disbarment where the court found that an attorney had committed theft by having clients pay him directly rather than paying his law firm); *Addams,* 579 A.2d at 193, 199 (noting that misappropriation does not require corrupt intent or that clients have complained of the misappropriation or felt harmed by it in order for there to be

grounds for disbarment). Therefore, respondent has not demonstrated that his misconduct would warrant discipline different from that imposed in Maryland, and the presumption of identical discipline applies.[3]

Accordingly, it is ORDERED that Michael R. Carithers, Jr., is hereby disbarred from the practice of law in the District of Columbia, effective immediately. For purposes of reinstatement, respondent's disbarment shall be deemed to run from November 17, 2011, the date of his interim suspension.

---

3. Because we determine that the misconduct in this case would have resulted in the same sanction in this jurisdiction as in Maryland, we need not consider the second part of the two-step inquiry that would analyze whether any difference in punishment would be substantial.